JOHN GLENN, as Trustee, etc., Appellant, *v.* DAVID J. GARTH et al., Respondents.

To constitute a ratification by a principal of an unauthorized act of his agent, where no rights of third persons are involved, there must be a conscious and intended approval of the act.

No implication of authority to transfer corporate stock upon the books of the corporation can attend a purchase by one broker of another; as by the common custom of dealing each knows the other is simply acting as agent for third parties.

*Webster* v. *Upton* (91 U. S. 71), distinguished.

As creditors of an insolvent corporation seeking to recover of a holder of its stock an unpaid balance upon the stock, simply claim through the corporation they have no greater right than belongs to it.

A person may be a holder of stock without being in the full sense of the term a stockholder; no one can be made a stockholder without his consent, express or implied.

The liability of shareholders for calls made on account of unpaid stock, can only be enforced by action in the nature of assumpsit and necessarily rests upon a promise to pay express or implied; such promise must be proved by competent evidence.

Where, therefore, no express promise is claimed and it appears that one sought to be charged as a shareholder never accepted that relation, that it was put upon him by another without authority and against his will, and that upon being advised thereof he repudiated it, no promise can be implied and he may not be held liable.

In an action brought by plaintiff, as trustee for the benefit of creditors of the N. E. & T. Co., a Virginia corporation, against defendants, who were alleged to be stockholders, to recover an assessment for the amount

unpaid upon their stock, it appeared that one F. applied to defendants, who were bankers and brokers in the city of New York, in the habit of purchasing and carrying stocks for customers on a margin, to purchase for him some of the stock of that corporation, which they knew to be assessable. In such transactions it was defendants' uniform custom not to cause corporate stock, purchased by them as agents for customers, to be transferred to them on the books of the corporation, but to take and hold stock certficates assigned in blank. An order was given by defendants to one McK., a broker in Baltimore, to buy the stock and send the certificates and bill to them. McK. purchased the stock in question, and without authority, caused it to be transferred to defendants upon the books of the company. *Held*, that this unauthorized act, in the absence of any facts constituting an estoppel or a ratification, did not make the defendants stockholders.

It did not appear that either the corporation or its creditors did or forbore anything upon the faith, or because of the appearance of ownership in defendants. *Held*, that there was no estoppel.

Also *held*, that conceding the rule to be, that one who authorizes and permits a transfer to himself of shares of stock upon the books of a corporation, is, when the rights of corporate creditors are involved, equitably estopped from denying the apparent ownership, without regard to the question as to whether such creditors had acted or failed to act in consequence of such apparent ownership, in order to make the rule applicable, it must first be made to appear that defendants either originally authorized or subsequently ratified the transfer.

When the certificate reached defendants and they discovered the mistake made by McK., they immediately wrote him repudiating the transfer, denying his authority to make it and directing him, in order to correct the mistake, to sell and convey the stock, and for this purpose, returned to him the stock certificates with an assignment thereon executed in blank; they also notified F. of their action. McK. thereupon sold the stock, but before it was transferred on the corporate books, the corporation failed and made an assignment to trustees. *Held*, that defendants' action did not constitute a ratification; nor did the fact that they paid McK. for the stock after receipt of the certificate, with knowledge of its form, as McK. was authorized to make the purchase, and so was entitled to the purchase-money, notwithstanding the mistake in the transfer; and that, therefore, as there was neither an authorized transfer nor a ratification, there was no estoppel.

Under the statute of Virginia (Code of 1860, chap. 57, § 7), an assignment of stock appearing upon the books of a corporation vests the title in the assignee "so far as may be necessary to effect the purpose of the sale, pledge or other disposition thereof," and the statute declares that "a person in whose name shares of stock stand on the books of the company shall be deemed the owner thereof as regards the company." *Held*, the meaning was that the books should be conclusive against the company,

not against one so appearing thereon as a stockholder; and that, there-
fore, defendants were not estopped by the books, at least in the absence
of evidence that any creditor became such after the transfer by McK.,
with knowledge of the names of those appearing as stockholders, or
that any creditor did or forbore anything upon the faith of defendants'
apparent ownership.

*Magruder* v. *Calston* (44 Md. 350); *McKim* v. *Glenn* (66 id. 482), distinguished.

(Argued March 7, 1892; decided April 12, 1892.)

APPEAL from order of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made June 10, 1891, which set aside a verdict in favor of
plaintiff, sustained defendants' exceptions, ordered to be heard
in the first instance at the General Term, and granted a new
trial.

This action was brought by plaintiff, as trustee of the
National Express and Transportation Company, a Virginia
corporation, to recover from defendants, as alleged stockholders
therein, an assessment for a balance due and remaining unpaid
upon 490 shares of the stock, which the complaint alleged
were purchased by the firm of Harrison, Garth & Co.

Said corporation made an assignment for the benefit of cred-
itors to plaintiff September 20, 1866, by which the right to
call for unpaid subscriptions of the stock passed. But twenty
per cent of the subscriptions had been paid. An assessment
was made by the trustees for the eighty per cent unpaid.

Further facts are stated in the opinion.

*John Howard, Burton N. Harrison* and *Arthur H. Mas-
ten* for appellant. The only questions before the General
Term were questions of law arising upon defendants' excep-
tions taken at the trial; the General Term could not set aside
the verdict on the facts, unless there was such an absence of
evidence to support a material finding that the court can
determine as matter of law that the fact was unproved. (*M.
N. Bank* v. *Sirret,* 87 N. Y. 325.) The rule is the same when
the verdict is directed by the court in a case like this, as in the
case of any other verdict; the defendants in the case at bar, at

the conclusion of the evidence, moved for a nonsuit and, when that motion was denied, did not ask to go to the jury; they thus consented that the questions of fact be determined by the court, and the determination made by the direction of the verdict in favor of the plaintiff is final. (*Ormes* v. *Dauchy*, 82 N. Y. 448; *Dillon* v. *Cockcroft*, 90 id. 650; *Stratford* v. *Jones*, 97 id. 589; *Kirtz* v. *Peck*, 113 id. 226; *Sutter* v. *Vanderveer*, 122 id. 654; *Porter* v. *Smith*, 107 id. 534; *Aldridge* v. *Aldridge*, 120 id. 616; *Patterson* v. *Robinson*, 116 id. 199.) The only question to be now considered is, was there any evidence to show that the defendants became stockholders. (*Adderly* v. *Storm*, 6 Hill, 624; *Rosevelt* v. *Brown*, 11 N. Y. 148; *Turnbull* v. *Payson*, 95 U. S. 418; *In re E. C. Bank*, 18 N. Y. 199; *Vail* v. *Hamilton*, 85 id. 458; *Cutting* v. *Damerell*, 88 id. 410; *Hawkins* v. *Glenn*, 131 U. S. 335; Code Civ. Pro. § 942; *Lewis* v. *Glenn*, 84 Va. 947; *Vanderwerken* v. *Glenn*, 85 id. 9). Defendants were stockholders. (*M. N. Bank* v. *Hall*, 83 N. Y. 345; *Wilson* v. *Little*, 2 id. 446; *Horton* v. *Morgan*, 19 id. 172; *Ketcham* v. *Bank of Commerce*, Id. 499; *Markham* v. *Jaudon*, 41 id. 243; *Wicks* v. *Hatch*, 62 id. 540; *Caswell* v. *Putnam*, 120 id. 157; 1 Morawetz on Corp. § 108; 2 id. § 839; *Chapman* v. *Basker*, L. R. [3 Eq.] 361; *Webster* v. *Upton*, 91 U. S. 71; *McNeil* v. *F. N. Bank*, 46 N. Y. 332; *Upton* v. *Burnham*, 3 Biss. 525.) There is nothing in the case to suggest a reason why this court should not enforce, as against these defendants and in this action, the assignment made in Virginia, September 20, 1866, by a corporation of that state, and which has been by the courts of that state held to be valid and effectual for the benefit of creditors. There is no question arising in this case between a creditor resident elsewhere and an attaching creditor or any other creditor resident within the state of New York. (*Guillander* v. *Howell*, 35 N. Y. 662; *Livermore* v. *Jencks*, 21 How. [U. S.] 146; *B. & O. R. R. Co.* v. *Glenn*, 28 Md. 287; *Fuller* v. *Steiglitz*, 30 Ohio St. 355, 362; *Moore* v. *Willett*, 37 Barb. 663; *Ackerman* v. *Cross*, 40 id. 487; *In re Waite*, 99 N. Y. 448; *Peterson* v. *C. Bank*, 32 id. 21.) This cause has been once to this

court — and this court then held the action to be, in form and substance, based upon contract, express or implied, and required by our statute to be brought to trial at a jury term — that, with this complaint and these parties, this action could not proceed as one in equity. (Code Civ. Pro. § 968; *Glenn v. Lancaster*, 109 N. Y. ·642.) The three defendants who answered and defended were members of the firm of Harrison, Garth & Co.; their liability as individual members of the corporation, was fixed by the laws of Virginia. (*Pearsall v. W. U. T. Co.*, 124 N. Y. 266; *Flash v. Conn*, 109 U. S. 371; *C. S. R. R. Co. v. Gebhard*, 109 id. 528, 537, 538; *Glenn v. Liggett*, 135 id. 533, 544, 545; *Glenn v. Clabaugh*, 65 Md. 68; *P. R. R. Co. v. Bartlett*, 12 Gray, 244; Rorer on Inter. Law, 289; *Silliman v. F. G. & C. R. R. Co.*, 27 Grat. 130; *Bockover v. Life Assn.*, 77 Va. 85.) The individual stockholders were not necessary or proper parties defendant to the creditor's suit in the Virginia court; they were represented in that suit by the corporation itself, which was a party defendant, and the judgment against the corporation in that action is binding upon and conclusive against, the several stockholders individually. (*Hatch v. Dana*, 101 U. S. 205; *Hawkins v. Glenn*, 131 id. 319; *Glenn v. Williams*, 60 Md. 115; *Hambleton v. Glenn*, 85 Va. 9; *Lewis v. Glenn*, 84 id. 969.) Present assignees of stock, or sometime holders of stock who have assigned their stock to other persons, are, under the laws of Virginia, as much bound by those decrees of the Virginia courts as were the original subscribers for or holders of the stock. (*Glenn v. Scott*, 28 Fed. Rep. 804; *McKin v. Glenn*, 66 Md. 479; *Hawkins v. Glenn*, 131 U. S. 319; *Hambleton v. Glenn*, 85 Va. 901; Code of Va. chap. 58, §§ 25, 27, 28; Story on Agency, § 344; 1 Chitty on Cont. 274; 1 Pars. on Cont. 548, 549; *Cammack v. Soran*, 30 Gratt. 292, 295; *O. D. S. C. Co. v. Burckhardt*, 31 id. 664, 680; *Williams v. Lord*, 75 Va. 404; *Gordon v. Rixey*, 76 id. 698; *Magruder v. Colston*, 44 Md. 355, 356; *Aultman's Appeal*, 98 Penn. St. 506, 516; *Weelock v. Kost*, 77 Ill. 298; *Hale v. Walker*, 31 Iowa, 344; *Moore v. Jones*, 3 Woods [C. C.], 53; *Pullman v.*

*Upton*, 96 U. S. 328; *National Bank* v. *Case*, 99 id. 628; *Anderson* v. *P. W. Co.*, 111 id. 483.) No Statute of Limitations applies to affect the plaintiffs right of recovery against these defendants. (*Williams* v. *Taylor*, 120 N. Y. 244; *Glenn* v. *Williams*, 60 Md. 95; *Glenn* v. *Semple*, 80 Ala. 159; *L. D. & Co.* v. *Glenn*, 87 id. 618, 619; *Glenn* v. *Saxton*, 68 Cal. 353; *Glenn* v. *Howard*, 81 Ga. 383; *Glenn* v. *Soule*, 22 Fed. Rep. 417; *Hawkins v. Glenn*, 131 U. S. 319; *Glenn* v. *Liggett*, 135 id. 533; *Lewis* v. *Glenn*, 84 Va. 947; *Vander-werken* v. *Glenn*, 85 id. 9; Code Civ. Pro. § 406; *Sands* v. *Campbell*, 31 N. Y. 345; *Berrien* v. *Wright*, 26 Barb. 208; *McQueen* v. *Babcock*, 41 id. 337; *Hubbell* v. *Medbury*, 53 N. Y. 98; *Fincke* v. *Funke*, 25 Hun, 616; 122 N. Y. 227; *Van Wagoner* v. *Terpenning*, 46 Hun, 425; *Wilkinson* v. *F. N. F. Ins. Co.*, 72 N. Y. 499.) The defendants were not released from their liabilities as stockholders because of the so-called compromises made with other stockholders who availed themselves of the opportunity to settle promptly at less than the full amount of their liability — and afforded to all stockholders by authority of the Virginia court, but which these defendants did not avail of. (*Ogilvie* v. *K. Ins. Co.*, 22 How. [U. S.] 380; *Hatch* v. *Dana*, 101 U. S. 205; *Hall* v. *S., etc., R. R. Co.*, 6 Ala. 744; *Hambleton* v. *Glenn*, 85 Va. 901; *Hawkins* v. *Glenn*, 131 U. S. 330, 331.) A foreign trustee, such as this plaintiff, substituted by a foreign court of competent jurisdiction to be the trustee of a valid trust, such as the one in question in this action, after removal of the original trustees of that trust, has capacity to maintain in this court, in his own name, such an action as this is. (*T. G. T. Co.* v. *C., etc., R. R. Co.*, 123 N. Y. 37; *Glenn* v. *Soule*, 22 Fed. Rep. 417; *Glenn* v. *Scott*, 28 id. 804; *Lewis* v. *Glenn*, 84 Va. 809.) The stock books of the company were competent evidence to show who were its stockholders and the transfers of its stock made by these defendants themselves by their specially appointed attorneys in fact. (1 Morawetz on Corp. § 170; Lowell on Transfers of Stocks, § 50; *Vanderwerken* v. *Glenn*, 85 Va. 9, 14; *Lewis* v. *Glenn*, 84 id. 947, 983, 984; *Glenn*

v. *Orr*, 96 N. C. 413 ; *Hawkins* v. *Glenn*, 131 U. S. 319, 335 ;
*Turnbull* v. *Payson*, 95 id. 418.)

*W. W. MacFarland* for respondents. The defendants
never were stockholders in the National Express and Trans-
portation Company. (Morawetz on Corp. § 43 ; 22 Wend.
348 ; 34 N. Y. 41 ; 83 id. 338 ; *Burgess* v. *Seligman*, 107 U.
S. 20 ; *Keyser* v. *Hitz*, 133 id. 138 ; *In re R. Bank*, 22 N.
Y. 17.) This action cannot be maintained upon the orders
made in the Virginia suit upon which it is founded. (*Brink-
ley* v. *Brinkley*, 50 N. Y. 202 ; *H. F. Ins. Co.* v. *Tomlinson*,
3 Hun, 630 ; Black on Judgments, § 559 ; Freeman on Judg-
ments, § 432 ; Rorer on Interstate Law, 95 ; *Walsh* v. *Donkin*,
12 Johns. 99 ; *Lazier* v. *Westcott*, 26 N. Y. 146.) All the
proceedings in the Virginia suit were as to these defendants
wholly void. (*Dodge* v. *Stevenson*, 77 N. Y. 101 ; *Durant* v.
*Abendroth*, 97 id. 140 ; *Windsor* v. *McVeigh*, 93 id. 274 ;
*Miller* v. *White*, 50 id. 137 ; *McMahon* v. *Macy*, 51 id. 155 ;
*Stephens* v. *Fox*, 83 N. Y. 313 ; Drake on Attachments,
§ 697 ; *Hastings* v. *Drew*, 76 N. Y. 9 ; Morawetz on Corp.
§ 157 ; *Slee* v. *Bloom*, 19 Johns. 456 ; *Brandt* v. *Benedict*,
17 N. Y. 93 ; *Bruce* v. *Platt*, 80 id. 379 ; *Hollingstead* v.
*Woodard*, 107 id. 96 ; Story's Eq. Pl. §§ 142–147.) The
question as to the liability of stockholders to creditors of the
express company was not involved in the Virginia suit, and
the court had no power to adjudicate in respect to that matter.
(*Hollingshead* v. *Woodard*, 107 N. Y. 101 ; Morawetz on
Corp. §§ 151, 152 ; Thompson on Stockholders, § 258 ; *Spear*
v. *Grant*, 16 Mass. 15 ; *Tucker* v. *Gilman*, 45 Hun, 193 ;
*Farnsworth* v. *Wood*, 91 N. Y. 308 ; *Pann* v. *Pentz*, 3 id.
416 ; *Story* v. *Furman*, 25 id. 214 ; *Bristol* v. *Sandford*, 12
Blatch. 341 ; *Underwood* v. *Sutliff*, 77 N. Y. 58 ; *Cuykendell*
v. *Corning*, 88 id. 129 ; *Hyde* v. *Linda*, 4 id. 387 ; *Coope* v.
*Bowles*, 42 Barb. 87 ; *Booth* v. *Clerk*, 17 How. [U. S.] 322 ;
*Brigham* v. *Ladington*, 12 Blatch. 237 ; *H. M. L. Ins. Co.*
v. *Taylor*, 2 Robt. 278 ; High on Receivers, § 175 ; *Griffith*
v. *Mangam*, 73 N. Y. 611 ; *Pollard* v. *Bailly*, 20 Wall. 520 ;

*Terry* v. *Tubman*, 92 U. S. 156; *Hadley* v. *Russell*, 40 N. H. 109; *Patterson* v. *Lynde*, 106 U. S. 519; *Erreckson* v. *Nesmith*, 4 Allen, 233; *Pfohl* v. *Simpson*, 74 N. Y. 137; *Christensen* v. *Eno*, 106 id. 100.)  The Statute of Limitations is a bar.  (*L. O. R. Co.* v. *Mason*, 16 N. Y. 451; *Howland* v. *Edmunds*, 24 id. 307; *Tuckerman* v. *Brown*, 33 id. 297; *Williams* v. *Meyer*, 41 Hun, 545; 120 N. Y. 244; *Maxon* v. *Disston*, 2 R. & C. 62; *Conklin* v. *Furman*, 48 N. Y. 527; *Knox* v. *Baldwin*, 18 id. 610; *Terry* v. *Tubman*, 92 U. S. 156; *Hollingshead* v. *Woodard*, 107 N. Y. 101; *Mills* v. *Mills*, 115 id. 80; *Phillips* v. *Therasson*, 11 Hun, 141; *O. N. Bank* v. *Olcott*, 46 N. Y. 17; *Graham* v. *R. R. Co.*, 12 Otto, 102.)

*William C. Clopton* for respondents.  The defendants never in fact or in law became stockholders.  (*Keyser* v. *Hitz*, 133 U. S. 138; *Miller* v. *White*, 50 N. Y. 141; *Webster* v. *Upton*, 91 U. S. 71; *Capper's Case*, L. R. [3 Ch. App.] 458; *Main's Case*, Id. 459; *Shortbridge* v. *Bosanquet*, 16 Beav. 84; *Whitney* v. *Butler*, 118 U. S. 655; *McNeil* v. *T. N. Bank*, 46 N. Y. 325; *N. Y. & N. H. R. R. Co.* v. *Schuiler*, 34 id. 41; *M. N. Bank* v. *Hall*, 83 id. 338; *Burgess* v. *Seligman*, 107 U. S. 20; *U. S. Assn.* v. *Seligman*, 92 Mo. 635; *Matthews* v. *Albert*, 24 Md. 527; *Simmons* v. *Hall*, 96 Mo. 679; *Glenn* v. *Sumner*, 132 U. S. 157; *Glenn* v. *Font*, 134 id. 400.)  The Statute of Limitations is a bar. (*In re Neiley*, 95 N. Y. 383; *Smith* v. *V. D. R. R. Co.*, 33 Gratt. 617; *Bowie* v. *Poor School*, 75 Va. 300; *Hambleton* v. *Glenn*, 13 Va. L. J. 242; *Hawkins* v. *Glenn*, 131 U. S. 333; *Hollingshead* v. *Woodard*, 107 N. Y. 101; *Handy* v. *Draper*, 89 id. 334; *Cuykendall* v. *Corning*, 88 id. 129; *Glenn* v. *Saxton*, 68 Cal. 358; Code Civ. Pro. §§ 381, 382, 388, 410, 415; *Miller* v. *White*, 50 N. Y. 141; *Curtiss* v. *Leavitt*, 15 id. 44; *Hyde* v. *Lynde*, 4 id. 392; *Coope* v. *Bowles*, 42 Barb. 94; *G. T. Co.* v. *Hurtin*, 9 Johns. 217; *Williams* v. *Meyer*, 41 Hun, 545; *Howland* v. *Edmonds*, 24 N. Y. 307; *Tuckerman* v. *Brown*, 33 id. 297; *L. O. R.*

*R. Co.* v. *Mason*, 16 id. 451; *O. Bank* v. *Olcott*, 46 id. 12 ; *P. R. R. Co.* v. *Byers*, 8 Casey, 22 ; *Diefenthaler* v. *Mayor*, 111 N. Y. 331, 338; *McCully* v. *P. R. R. Co.*, 8 Casey, 25 ; *P. R. R. Co.* v. *Graham*, 12 id. 77 ; *Laforge* v. *Jayne*, 9 Barr, 410 ; *Bell's Appeal*, 18 W. N. C. 551; *Codman* v. *Rogers*, 10 Pick. 112 ; *F. S. Bank* v. *Bridges*, 18 Atl. Rep. 611 ; *Garische* v. *Lewis*, 6 S. W. Rep. 54 ; *Terry* v. *Tubman*, 92 U. S. 156 ; *Terry* v. *Anderson*, 95 U. S. 628 ; *Glenn* v. *Dorsheimer*, 24 Fed. Rep. 538 ; *Glenn* v. *Priest*, 28 id. 907 ; *Corning* v. *McCollough*, 1 N. Y. 47 ; *Wiles* v. *Suydam*, 64 id. 173 ; *Van Hook* v. *Whitlock*, 3 Paige, 409 ; *Bruce* v. *Tilson*, 25 N. Y. 194 ; *Borst* v. *Carey*, 15 id. 505 ; *Bloodgood* v. *Bruen*, 8 id. 362 ; *Miller* v. *Brenham*, 68 id. 83, 87 ; *Lincoln* v. *Battelle*, 6 Wend. 475, 485 ; *Ruggles* v. *Keeler*, 3 Johns. 263 ; *Power* v. *Hathaway*, 43 Barb. 214 ; *Toulandon* v. *Lachenmeyer*, 37 How. Pr. 145 ; Whart. on Confl. of Laws, §§ 347, 348 ; *Scudder* v. *U. N. Bank*, 1 Otto, 406 ; *Roberts* v. *Ely*, 113 N. Y. 131–133 ; *In re Neilley*, 95 id. 390, 391 ; *Jex* v. *Mayor*, Id. 339 ; *Price* v. *Mulford*, 107 id. 303 ; *Carr* v. *Thompson*, 87 id. 160 ; *Ware* v. *Galveston*, 111 U. S. 170 ; *Kane* v. *Bloodgood*, 7 Johns. Ch. 89 ; *Lammer* v. *Stoddard*, 103 N. Y. 672 ; *O. N. Bank* v. *Alcott*, 46 id. 17 ; *Graham* v. *R. R. Co.*, 12 Otto, 102 ; *Knox* v. *Gye*, L. R. [5 H. L.] 655.) The plaintiff's contention that the Meyer injunction arrested the operation of the statute in the present case is untenable. (*Van Wagoner* v. *Terpenning*, 122 N. Y. 222 ; *Wilkinson* v. *F. N. Ins. Co.*, 72 id. 501 ; High on Injunc. § 87.) The stockholder's liability to creditors, if any arose after exhausting the corporate assets, did not pass by the assigment to the assignees ; and, as matter of law, could not so as to alter the remedy open to the creditor in this jurisdiction, or his legal relations to that liability in equity. (*Underwood* v. *Sutcliffe*, 77 N. Y. 58 ; *Pfohl* v. *Simpson*, 74 id. 137 ; *Hannah* v. *M. Bank*, 67 Mo. 678 ; *Bristol* v. *Sanford*, 12 Blatchf. 341 ; High on Receivers, §§ 205, 315 ; *Farnsworth* v. *Wood*, 91 N. Y. 313, 314 ; Code Civ. Pro. § 448 ; *Tucker* v. *Gilman*, 45 Hun, 196, 197 ; *Munn* v. *Pentz*,

3 N. Y. 415; Thompson on Stockholders, § 342; *Umsted* v. *Buskirk*, 17 Ohio, 113; *Wright* v. *McCormack*, Id. 86; *Bristol* v. *Sanford*, 12 Blatchf. 341; *Dutcher* v. *M. N. Bank*, Id. 435; *Osgood* v. *Laytin*, 3 Keyes, 521; *Weeks* v. *Love*, 50 N. Y. 571; *Calkins* v. *Atkinson*, 2 Lans. 12; 2 R. S. 463, § 36; Laws of 1852, chaps. 71, 67; 2 R. S. 469, § 69; 3 id. 728, § 7; 91 N. Y. 313; Code Civ. Pro. § 448; *Scudder* v. *U. N. Bank*, 1 Otto, 406; *Hollingshead* v. *Woodard*, 107 N. Y. 97; *Coope* v. *Bowles*, 42 Barb. 94; *O. N. Bank* v. *Olcott*, 46 N. Y. 12, 21, 22, *Diefenthaler* v. *Mayor, etc.*, 111 id. 331, 338; *Cuykendall* v. *Corning*, 88 id. 139, 140; *Lowry* v. *Leman*, 46 id. 119.) The plaintiff's action is founded upon two interlocutory orders made in the progress of an equity suit still pending in a Virginia court. So long as the papers are open in a cause still pending in court, a decree is not final in the sense of a "final disposition of the entire controversy between the parties." The judicial function is not concluded, and, until that is at an end, there can be no final judgment. (*Glenn* v. *Saxton*, 68 Cal. 358; *Tompkins* v. *Hyatt*, 19 N. Y. 534; Daniel's Ch. Pr. [5th ed.] 1018; *Kane* v. *Whittick*, 8 Wend. 224; *In re E. C. Bank*, 18 N. Y. 211; *Raynor* v. *Raynor*, 94 id. 248; *Jones* v. *Jones*, 81 id. 35; *Cuykendall* v. *Corning*, 88 id. 139, 140; *Durant* v. *Abendroth*, 97 id. 140, 141; *Windsor* v. *McVeigh*, 93 U. S. 274; *Schuehle* v. *Reiman*, 86 N. Y. 270; *Schrauth* v. *D. D. Bank*, Id. 390; *Oakley* v. *Aspinwall*, 4 id. 515; *Ferguson* v. *Crawford*, 70 id. 253; Daniel's Ch. Pr. 33; *Shepard* v. *Wright*, 59 How. Pr. 512; Freeman on Judg. § 588; 2 Smith's L. C. 641, 1145; 1 id. 1125; Rorer on Interstate Law, 87.) The constitutional provision (art. 4, § 1) requiring "full faith and credit" to be given in each state to the public acts, records and judicial proceedings of every other state, includes, in cases of judgments, only final judgments; and no action instituted in the courts of this state and bottomed upon an interlocutory judgment or decree of a foreign court, or of a domestic court, can be successfully maintained. (*Brinkley* v. *Brinkley*, 50 N. Y. 202; *H. F. Ins. Co.* v. *Tomlinson*, 3 Hun, 630; *Walsh* v. *Durkin*, 12 Johns. 99; *Lazier*

v. *Westcott,* 26 N. Y. 146; *Pearce* v. *Reed,* 2 N. H. 259; Rorer on Interstate Law, 94–96; Freeman on Judgments. §§ 251, 432; Black on Judgments, § 559; *Mann* v. *Pentz,* 3 N. Y. 415; *Christensen* v. *Eno,* 106 id. 100, 103; *Griffith* v. *Mangan,* 73 id. 611.) If the plaintiff or any creditor has, at any other time or place, in any jurisdiction other than that of New York, secured a final judgment against the company of which the defendants are alleged stockholders, such judgment has the effect here of only a simple contract debt, and, as such, is subject to the bar of limitation in six years. In order, therefore, to maintain an action brought in this jurisdiction upon a final judgment obtained in the courts of another state, it must be commenced within six years from the date of the judgment. (*Hubbell* v. *Condry,* 5 Johns. 132; *Bissell* v. *Hall,* 11 id. 168; Angell on Lim. §§ 65, 83, 84; *M'Elmoyle* v. *Cohen,* 13 Pet. [U. S.] 312; *Townsend* v. *Jemison,* 9 How. [U. S.] 407; *Duplex* v. *De Roven,* 2 Vern. 540; *Walker* v. *Witter,* Dougl. 1.) But no privity exists between the defendants and the creditors of this corporation; nor is a judgment against that corporation even *prima facie* evidence of debt against the defendants. (*Stephens* v. *Fox,* 83 N. Y. 317; *Patterson* v. *Lynde,* 106 U. S. 520, 521; *Miller* v. *White,* 50 N. Y. 141, 143, 144; Morawetz on Corp. §§ 66, 234, 237, 238; *McMahon* v. *Macy,* 51 N. Y. 155; *Whitehead* v. *Allen,* 3 Keyes, 562; *Strong* v. *Wheatton,* 38 Barb. 616; *Griffith* v. *Manyam,* 73 N. Y. 611; *Errickson* v. *Nesbith,* 4 Allen, 233; *Terry* v. *Tubman,* 92 U. S. 161; *Pollard* v. *Bailey,* 20 Wall. 520; *Spear* v. *Grant,* 16 Mass. 15; *Hadley* v. *Russell,* 40 N. H. 109; Thompson on Shareholders, § 259; *Barney* v. *City of Baltimore,* 6 Wall. 280; *Sherman* v. *Parish,* 53 N. Y. 483; *Mathez* v. *Neidig,* 72 id. 100.) Before suit against a stockholder on his unpaid liability will be entertained, the creditor must exhaust his remedy against the property remaining in the hands of the corporation, or received by its trustees on its dissolution. (*Cuykendall* v. *Corning,* 88 N. Y. 129; *Sturges* v. *Vanderbilt,* 73 id. 385; *Hastings* v. *Drew,* 76 id. 9; *McMahon* v. *Macy,* 51 id. 155; Cook on Stocks, §§ 222, 224;

*Hodges* v. *T. Ins. Co.*, 8 N. Y. 416; *Despard* v. *Walbridge*, 15 id. 374; *Sturtevant* v. *Sturtevant*, 20 id. 39; *McNeil* v. *T. N. Bank*, 46 id. 325; *Van Cott* v. *Van Brunt*, 82 id. 543.) Defendant assumed no liability to the corporation or its creditors. (*McMahon* v. *Macy*, 51 N. Y. 155; *Tracy* v. *Yates*, 18 Barb. 152; *Moss* v. *Oakley*, 2 Hill, 26; Thompson on Stockholders, §§ 291, 294; *Payne* v. *Bullard*, 23 Mass. 88; *Curry* v. *Woodward*, 53 Ala. 376; *Ogilvie* v. *K. Ins. Co.*, 22 How. Pr. 380; *Terry* v. *Tubman*, 92 U. S. 156; *Terry* v. *Anderson*, 95 id. 634, 635; *Sanger* v. *Upton*, 91 id. 61, 63; *Hatch* v. *Dana*, 101 id. 205, 210, 211, 214; *Scoville* v. *Thayer*, 105 id. 155; *Roynolds* v. *Douglass*, 12 Pet. 502; *Bushe* v. *Smith*, 16 Wall. 400, 401.) There is no provision by statute in Virginia for reviving the debts of an insolvent corporation outlawed by lapse of time, or for reinstating the claims of delinquent creditors of such barred by statute, or for proceedings in equity to subject the unpaid subscriptions to the payment of such debts thirteen years after the corporation had gone into liquidation; and all such stale debts, claims and equitable proceedings are governed by the same statutory rules and regulations relating to the debts of private individuals and solvent or "going" corporations. (Code of Virginia, chap. 57, §§ 3, 21.) In the winding up of an insolvent corporation the stockholders must be assessed equally. (*McCully* v. *P. R. R. Co.*, 32 Penn. St. 31; *Glenn* v. *Hawkins*, 131 U. S. 333; *Schrader* v. *M. Bank*, 133 id. 67; *In re E. C. Bank*, 18 N. Y. 210; *Spear* v. *Grant*, 16 Mass. 15; *Mann* v. *Pentz*, 3 N. Y. 423; Morawetz on Corp. § 151; Pollock on Cont. [1st Am. ed.] 93; Thompson on Shareholders, §§ 258, 259.) The trial justice erred in not dismissing the complaint because it does not state facts sufficient to constitute a cause of action against the defendants. (*Young* v. *N. Y. & L. S. Co.*, 15 Abb. Pr. 69; *Tracy* v. *Yates*, 18 Barb. 152; *Moss* v. *Oakley*, 2 Hill, 265; *Pfohl* v. *Simpson*, 74 N. Y. 143, 144.) This action is one of equitable cognizance. (*Glenn* v. *Lancaster*, 47 Hun, 634; 109 N. Y. 642; Code Civ. Pro. § 968; *Seymour* v. *Sturges*, 26 N. Y. 145;

*Savage* v. *Medbury*, 19 id. 32.) The complaint is clearly demurrable, and should have been dismissed at the trial. The remedy here, if there be any, is necessarily confined to the sovereignty of Virginia, and can have no recognition or effect beyond the boundary of that state. (*Seymour* v. *Sturges*, 26 N. Y. 140; 46 id. 128.) The common law gives no remedy against the stockholder to compel him to pay the debts of an insolvent foreign corporation. If the statute gives a remedy it must be strictly pursued, and then within the jurisdiction which gave it. Comity does not require enforcement without that jurisdiction. (*Book* v. *Clark*, 17 How. [U. S.] 322; *Derrickson* v. *Smith*, 3 Dutch. 166; *S. L. N. Bank* v. *Hendrickson*, 11 Vroom. 53; *Minchin* v. *N. Bank*, 9 Stew. 436; *Witherbee* v. *Baker*, 8 id. 501; *Errickson* v. *Nesmith*, 15 Gray, 221; 4 Allen, 233, 237; 46 N. H. 371; *Halsey* v. *McLean*, 12 Allen, 442; *Taft* v. *Ward*, 106 Mass. 525; *Lowry* v. *Inman*, 46 N. Y. 130; *Anderson* v. *Haddon*, 33 Hun, 440; *DeBrimont* v. *Penniman*, 10 Blatchf. 436; *Pickering* v. *Fisk*, 6 Vt. 102; *Drinkwater* v. *P. M. R. Co.*, 18 Me. 35; *Christensen* v. *Eno*, 106 N. Y. 97, 103; *Gray* v. *Coffin*, 9 Cush. 192; *Knowlton* v. *Ackley*, 8 id. 93; *Hadley* v. *Russell*, 40 N. H. 109; *Tibballs* v. *Bidwell*, 1 Gray, 399.) The exception to the verdict was well taken, because, among other reasons, the trial justice ordered interest to be calculated from the time of the alleged decrees. Interest is allowable only from the time of demand by suit. (*Wheeler* v. *Miller*, 90 N. Y. 362, 363; *Handy* v. *Draper*, 89 id. 334; *Shellington* v. *Howland*, 53 id. 372; *Burr* v. *Wilcox*, 22 id. 557; Cook on Stock, § 227.)

*John R. Abney* for respondents. The defendants were never stockholders. The fact that certificates were issued in their names did not constitute them stockholders, when they did not request or consent to it, but objected. (*McMahon* v. *Macy*, 51 N. Y. 155; *In re R. Bank*, 22 id. 9; *Keyser* v. *Hitz*, 133 U. S. 138; *McClelland* v. *Whetely*, 15 Fed. Rep. 322; *Cortmell's Case*, L. R. [9 Ch. Ap.] 694; *Henney's Case*,

2 McN. & G. 201 ; · *Chapman's Case*, L. R. [3 Eq.] 361 ; 1
Morawetz on Corp. 223.) Before any recovery can be had
against stockholders here, the creditor's remedies against the
property received by the trustees under the assignment must
be shown to have been exhausted. (*Sturges* v. *Vanderbilt*, 73
N. Y. 390.) This action not having been begun within twenty
years after the deed of assignment was made, is barred by the
Statute of Limitations. (Code Civ. Pro. § 381 ; *Smith* v. *V.
M. R. Co.*, 33 Gratt. 617.) If the claim is independent of
that deed, the making of the deed was equivalent to a call,
and it was barred in six years from that date. (Code Civ.
Pro. § 382.)

FINCH, J. This action rests upon contract. Its foundation ·
is an express agreement between the corporation, the National.
Express and Transporation Company, on the one side and the
defendants on the other. It depends upon a created and
existing contract-relation, from which, and from which alone, can
spring the liability alleged. ·(*McMahon* v. *Macy*, 51 N. Y. 155 ;
*Matter of Reciprocity Bank*, 22 id. 9 ; *Keyser* v. *Hitz*, 133
U. S. 138.)

To establish that relation it must appear that the minds of
the parties met, that the defendants agreed to be and become
stockholders in the corporation with the privileges and respon-
sibilities of that relation, and that the corporation accepted
them as such. The former could not be put in that position
against their will, without their consent, by the unauthorized
and unratified act of a third person; for in such case there
would exist no contract-relation, no mutuality of agreement,
but simply a mistake or a wrong which the defendants might
ratify and condone, or repudiate and reject. The judgment
of the General Term, which reversed that rendered by the
trial court in favor of the plaintiff, rests upon this doctrine,
and holds that the defendants never took upon themselves
the contract-relation of stockholders in the Virginia cor-
poration, and we are to determine whether that fact appears.
without either proof or admissible inference to the contrary,

since the reversal was for error of law and founded upon exceptions.

The facts established were the following : The corporation was created under the laws of the state of Virginia, with a capital stock fixed at five millions of dollars, of which but twenty per cent had been actually paid in. The remaining eighty per cent was payable by the stockholders whenever called for by the company, and upon such call became a debt and due in accordance with the terms of the lawful demand. That corporation supplanted and superseded a prior organization of similar plan and purpose, but with a much smaller capital stock ; and among the corporators of the earlier company was one Ficklin, who may be supposed to have known and understood the financial condition and prospects of each company. He desired to purchase some of the stock of the new corporation, but, lacking the necessary funds, applied to the defendants to buy it and carry it for him. The latter were bankers an'd brokers, in the daily habit of carrying stocks upon a margin, and conducting such business in one uniform and customary manner. Buying for others, and not for investment, they never caused the stock purchased to be transferred to themselves upon the corporate books, and never intended to be and never became stockholders in the companies whose securities or certificates they handled. What they bought, or held as collateral, was always the certificate of some stockholder, assigned in blank, and which might pass through many hands before a transfer on the books of the companies. By this process they bought and held the right to become stockholders ; the potential authority and opportunity to assume that relation ; but were equally at liberty not to do so ; at least in all cases where the corporate law recognized no transfer except upon the corporate books. Before such transfer the defendants were in one sense holders of stock, but not, in relation to the corporations, stockholders. To these brokers doing business in this manner Ficklin applied to buy for him the stock of the transportation company and carry it for him upon a margin ; and they assented, knowing the stock to be assessable

and not listed; and both parties contemplating an ownership by the customer and a lien or hypothecation as the interest of the broker. Whatever purchase was made by the latter was meant to be as agent for the customer, and not as owner. It was at Ficklin's suggestion that the stock was picked up in Baltimore, and most of it through the agency of McKim, Who directed him to buy is not entirely certain. The strong probabilities are that it was Ficklin, but whoever it was the order was given to buy the stock for the account of the defendants and send the certificates and bill to them. There is no pretense that any direction or authority was given by anybody to McKim to cause the stock to be transferred upon the books of the company. Whether the order was given by one of the defendants or by Ficklin, it did not extend to such a transfer, and could not have done so without violating the actual contract made and the proved intention of the parties.

But at this point McKim made a mistake, without which the present litigation would have been impossible, and upon which the whole claim of the plaintiff rests. He caused the stock purchased to be transferred to the defendants upon the books of the company. He did so honestly enough, but without authority or direction and solely by reason of his ignorance of the actual facts and his misinterpretation of the purpose of the parties. His act did not make the defendants stockholders. He was not empowered to make any such contract or establish any such relation, and could not impose it upon them by an act which was in no sense theirs. The defendants could only become responsible for it by estoppel or ratification. There never was any basis for an equitable estoppel. Neither the company nor any of its creditors did anything or forbore anything upon the faith or because of the appearance of ownership in the defendants. The case is bare of any such proof. The question raised, however, is one of ratification, and grows out of the subsequent action of the defendants. When the certificate reached them they discovered McKim's mistake. Garth wrote to him repudiating the transfer and denying his authority to make it, and directing him, as

a means of undoing the mischief, to sell and transfer the whole four hundred and ninety shares. To enable him to do so, in accordance with established forms, the defendants signed and executed an assignment in blank of the stock transferable by delivery and McKim sold it, but it was not transferred upon the corporate books. Before that could have been done, or at all events before it was done, the corporation failed and made a general assignment to trustees for the benefit of creditors, and no transfer on the books having been accomplished, the defendants are sought to be charged as stockholders with the whole eighty per cent remaining unpaid upon the stock subscriptions. The question, therefore, culminates in the legal effect of the conduct of the defendants, and becomes an inquiry whether their act, intended as a repudiation, meant to undo what had been done and so declared and described at the time must, nevertheless, because of its form be deemed evidence of an assent never in truth given. In considering that question we may proceed upon the actual facts and unhampered by any equities founded upon their false appearance since none such existed.

It is first said that the defendants paid McKim for the stock after they had received the certificates and with full knowledge of their form. I think the evidence makes reasonably possible such an inference, and so accept it as a fact. But such payment it was the duty of the defendants to make and the right of McKim to require, notwithstanding the mistake made. His fault was not in buying the stock, he was authorized to do that, and the defendants were bound to reimburse him. The mistaken form of the certificates justified a demand for correction, but not a refusal to pay as between defendants and McKim, and such a correction would be consistent with the purchase by the agent and the payment by the principal. That payment was a confirmation of the authorized purchase, but not a ratification of the unauthorized act which followed it. That was repudiated at the very time of the payment and consistently with it, both to McKim the broker and Ficklin the general owner.

But greater reliance is placed upon the action which followed. As has been explained, the defendants instead of returning the certificates to McKim with a demand that their form be changed, assigned them in blank and required him to sell them. Unexplained, the act recognized an ownership and the existing transfer to the defendants, and was imprudent exactly for that reason. Why they did so we can easily see. They must have realized that McKim might be unable to procure a cancellation of the transfer on the books, or meet with delay and possibly litigation in the effort; and that if the certificates were delivered to Ficklin to be registered in his name and then be assigned by him in blank to defendants they would be left without security in the interim. Both methods of procedure, although acts of disaffirmance and repudiation, would require an assignment by the defendants of the formal record title in them. The company would naturally require it for their safety and to preserve the regularity of their books if a cancellation was sought ; and it would be equally necessary in order to put title in Ficklin. In carrying out those methods of correction and disaffirmance the formal assignment of the formal title instead of proving ownership would be an element in the disclaimer of ownership. The method of an immediate sale involved in the same way a transfer of the same formal legal title, and when done, not as a confirmation of ownership, but as a method of changing the registry of the company with a view of correcting the false appearance of ownership I can see no reason for deeming it a confirmation or ratification. For what is a ratification where no rights of third persons are involved ? It implies a conscious and intended approval of the act done. It rests upon the actual and existing purpose to make such approval. Hence, the courts say, that it must occur with full knowledge of all the facts. It rests in the intention, where the question is between the original parties and depends upon the facts and not upon appearances. In this case we know that the intention was to disaffirm and repudiate the apparent contract-relation seemingly established by the mistaken action of McKim, and that the assignment in blank for

purposes of sale was not meant to affirm the apparent owner-ship, but to transfer the formal legal title put in the defendants against their will. The facts show without contradiction that the defendants never entered into the contract-relation with the corporation of stockholders therein, but on the contrary refused to be put in that position, and acted with a view to undo and alter the appearances in such direction which accrued without their consent. As between the original parties that could not be deemed a ratification which was accompanied by a refusal to ratify, and a declared purpose to undo the unau-thorized act. The form adopted, by itself and unexplained, would tend to an inference of ratification, but it is not left unexplained. The actual truth is established, and that truth must prevail over the form adopted as between parties who have not been misled, to their harm, by the form of the trans-action as distinguished from its substance.

But it is further claimed that under the statutes of Vir-ginia, as expounded by their courts, the transfer upon the books of the company is conclusive upon the defendants, and makes them stockholders at least as to creditors, irrespective of the circumstances of the registry. It is obvious that any enactment which enabled a wrong-doer to load upon a stranger the heavy responsibilities of a stockholder without his know-ledge or assent would be an outrage upon the rights of the individual not to be expected. The statutes of Virginia accomplish no such wrong, but operate reasonably within cer-tain well-defined limits. We are referred to the Code of 1860, chapter 57 and section 7. That regulates the rights of the assignor of stock, appearing as owner upon the corporate books relatively to his assignee who does not so appear and to the creditors of and subsequent purchasers from the former, and vests the title in the assignee, not, let it be observed, for all purposes, but " so far as may be necessary to effect the purpose of the sale, pledge or other disposition," and subject to the provis-ions of the 25th section. That is in these words: " A person in whose name shares of stock stand on the books of the com-pany shall be deemed the owner thereof as regards the com-

pany." The plain meaning is that the corporation which has acknowledged the ownership and accepted its evidence and admitted it upon its records shall not be at liberty to dispute it. Its meaning is not that it shall be conclusive against the alleged stockholder. Indeed, in *Vanderwerken* v. *Glenn* (85 Va. 9), the court state the rule to be that the record upon the corporate books is *prima facie* evidence of the ownership, and after examining all the cases referred to I find none which venture any further. In *Magruder* v. *Colston* (44 Maryland, 350), the pledgee of stock had himself caused it to be registered in his own name as owner, and became a stockholder by his conscious and voluntary act and assent as respected the company and its creditors. And in *McKim* v. *Glenn* (66 Maryland, 482), reliance was put upon the transfer on the books largely upon the ground that there was no foundation for saying that the transfer was made without authority.

If in some of the cases there were expressions indicating an approach to the idea of an equitable estoppel upon the ground that creditors might be presumed to have trusted the company upon the faith of the apparent ownership, they did not in the end rest upon it, because in every instance the transfer on the books was shown to be the defendant's conscious, voluntary and intended act, and not the representation of a falsehood. Here the trustee who sues represents the corporation and the whole body of its creditors. I cannot find even that any creditor became such after the transfer by McKim, or with knowledge of the names of the stockholders, or that anybody up to the moment of the failure and of the trust deed which fixed all the creditors' rights, did anything or forebore anything upon the faith of an ownership of stock by the defendants. We may stand, therefore, as did the General Term, upon the truth of the transaction as proved and established. The presumption which might have flowed from the form of the transaction disappears upon the explanation made, and in view of the substantial truth proved by the evidence.

The order should be affirmed, with costs, and with judgment absolute against the plaintiff upon the stipulation.

All concur.

Order affirmed and judgment accordingly.

Upon a subsequent motion for a reargument the following opinion was handed down:

FINCH, J.  This is a motion for a reargument, made long after the entry of judgment on the remittitur and when we have lost jurisdiction of the case, suggesting no point overlooked, citing no new and pertinent authority, but stoutly and vigorously insisting that the court has gone astray, and that its decision is unsound.  We are expected to ask for a return of the remittitur and seek in that manner to retrace our steps and correct an error alleged to be dangerous.  Ordinarily, no more than this would need to be said to justify a denial of the motion ; but the case itself is both important and peculiar, and the conviction of the unsuccessful counsel is so sincere and profound that we feel willing to venture a new attempt to locate correctly the mistake which one or the other of us has made.

It is insisted that we have violated the rule that one who authorizes and permits a transfer to himself of shares of stock upon the books of a corporation must be held to be a stockholder, whether in truth the real owner or not, when the rights of corporate creditors are involved, and is equitably estopped from denying the apparent relation.  I admit the rule and have nowhere doubted or denied it, although I am unwilling to agree that it logically rests upon or amounts to an equitable estoppel in a case where no creditor relied upon or even knew of or could have been deceived by the false appearance.  But waiving that criticism for present purposes, and assenting to the rule as presenting a possible case of equitable estoppel, we still say, as was declared in the opinion, that there is no question of estoppel in the controversy.  That question is not reached, because before it can be reached there must be shown to exist some act of the party, done by him or with his assent, creating the alleged apparent relation.  That fact must be established before any question of estoppel can arise.  If the

act done, the false appearance created, is the act, not of the party, but of some third person, such party is in no manner bound or affected by it unless he either originally authorized it or subsequently ratified it. Only by the one process or the other can it become his act and until he can be held responsible for it there can be no question of estoppel ; and there is not a case cited on the original argument or on the brief now presented in which the rule of estoppel was applied which failed to show that necessary and conscious and voluntary act of the party estopped.

Now, what we decided in this case and all that we decided was that there was no such act on the part of the defendants, and how the determination of that effect of the evidence can shake the foundations of the commercial law does not readily suggest itself to our minds. The pith of the controversy lies at this point alone. The defendants did not originally authorize the transfer of the shares to them upon the books of the company. There was no dispute in the evidence about that. The act was done without their antecedent knowledge or authority. They never so intended ; their whole course of business was to the contrary, and the very contract which induced the purchase involved an ownership other than their own. They did direct the purchase of the stock in pursuance of their contract with Ficklin to carry it for him on a margin, and it is now broadly intimated that such direction carried with it an implied authority in the vendors or assignors to make a transfer upon the books of the company. There at least is a doctrine upon which commercial interests, if not the commercial law, may look with some degree of terror. The authority for it, to which we are referred, is *Webster* v. *Upton* (91 U. S. 71). That appears to have been a case of the direct purchase of shares from a stockholder of record by one desiring and intending to become himself the owner. In such a case, where the purchase might be reasonably deemed one for investment, it may be, as the court declared, that there is implied authority in the vendor to make the transfer on the books of the company, but no such implication can attend the

dealing of broker with broker. Each knows that the other is merely a middleman or agent for third persons, for that is their customary and constant attitude. The broker buying neither knows nor cares who the real seller will prove to be, and the broker selling neither knows nor cares who is to be the real buyer. Each understands that the other is only the intermediate channel or agency of transfer, and an absolute ownership on either side would seldom be suspected. To say of such a case that the broker selling is authorized by implication to treat the broker buying, not merely in some, but in all respects, as the ultimate owner by making a transfer to him on the corporate books, instead of sending certificates assigned in blank after the customary method, would be to introduce into the broker's business an element of incalculable danger. It would be ruinous to the stock exchanges and perilous to their dealers. Who would loan money upon stock collateral or carry stocks for customers upon a margin, if the broker-vendor could at once, on a mere order to buy, make the broker-vendee a stockholder and load upon him ruinous responsibilities? If the latter is so at the mercy of the former, there might be purchases for investment, but none except at enormous peril for that vast volume of transactions which proceed without and do not contemplate such transfers. The whole course of the broker's business, as disclosed by the evidence, forbids the existence of any such implied authority. The defendants, therefore, were put upon the books of the company as shareholders, without their knowledge, authority or consent, and contrary to their purpose and intention. The act was not theirs and could only become theirs by a subsequent ratification, and hence it was that we said before and now repeat that the question involved is not one of estoppel, but solely and only one of ratification.

Proceding to that inquiry we held that there was no such ratification. We need not here repeat the argument. We did not then and do not now underrate the difficulty which grew out of the imprudent mode of redress which the defendants adopted. Its form furnished ground for some technical

reasoning quite plausible and not without elements of strength. We sought to take fairly its full measure and weight. The act done was an act of repudiation. The unauthorized certificates were returned at once to the agent who violated his duty with a refusal to accept the situation. Similar notice was sent to Ficklin. But the defendants knew that the formal legal title had been put in them and could not easily be got out of them without their own formal assignment and that they attached as a mode of enabling McKim to undo the mistake as they had demanded that he should. It is upon that act and that alone that the whole case of the plaintiff rests. An act intended for a repudiation is claimed to be conclusively one of ratification. We gave the reasons why we thought the substance of the transaction should prevail over its form and the real truth over the false appearance. And that view we think is justified even as against creditors when we take into consideration the real equities of the situation. No creditor in the present case has been at all misled by the wrongful entry of defendant's name on the books of the company. Not one is shown to have seen that entry or heard of it, to have changed his position in the least degree on account of it, or to have been misled to his injury by it to the value of a single farthing. No servant of the company worked an hour in reliance upon that registry and no railroad carried a pound of freight more because of it. Every debt contracted would have been contracted had the wrong entry never appeared upon the books. To manufacture an equity out of such material to shut out the truth is little short of nonsense. If we can speak of such a situation as constituting an estoppel at all it must be on the ground of a presumed or constructive reliance by the creditors upon the existence of a body of stockholders generally, liable to make up the capital, and not upon the presence among them of some particular individual. But if the defendants did not become stockholders, their assignors remained such and some of them have already had to pay, and the real right of the creditors is outside of the question between

the disputants and is in no sense invaded by a fair and just determination of that question.    It is impossible to discover what equity they have to insist that one who did not consent to the entry should be substituted for one who did, or to fasten upon the former the liability of the latter.    The creditors may indeed justly insist that one who has permitted himself to be registered as a stockholder and taken the benefit of that act shall not be allowed to escape its burdens, for that is the rule which I have steadily admitted and which the federal court in the case cited puts, not upon the ground of an estoppel, but upon the theory that the capital or the liability for it is a trust fund which neither the company nor its members can divert from the security of its creditors; but the latter have no shadow of an equity to insist that one whose name was put upon the roll without his consent and against his will shall not prove the truth until they show that they trusted to that very false appearance and were misled by it, and that the apparent shareholder was in some manner responsible for it.    In this case the creditors have no such equity to prevent the exact truth of the transaction from being proved and having its due effect.

I think we may reach the same result from another direction.    In *Seymour* v. *Sturgess* (26 N. Y. 134), we held that the liability of a shareholder to the company for calls made on account of unpaid stock could only be enforced by an action in the nature of *assumpsit*, and necessarily rested upon a promise to pay, express or implied; that such promise must be proved by competent evidence, and equally whether the rights of creditors were involved or not.    Indeed, it was explicitly declared, which is the point I have been seeking to elucidate, that such creditors, claiming through the company, have no greater right than belongs to it.    Now, in this case no express promise to pay the calls was made or is pretended. The plaintiff's action necessarily rests upon some implied promise.    But what is an implied promise?    It is a fiction which the law raises to express the equity of a situation.    It is the law's judgment of what on the facts is just and right

between the parties.   It is a promise which, though not made, ought to have been made.   Where the shareholder consciously accepts that relation, he ought to bear its burdens as well as enjoy its benefits, and it is easy to imply a promise to perform that duty.   But where he does not accept the relation, where it was put upon him by another without authority and against his will, where, instead of accepting its benefits, he repudiates them at serious loss, where his mind and that of the company never met in any contractual relation, where it was not his duty to pay, and he explicitly refused to take what was offered, all foundation for an implied promise is gone.   The facts do not admit of it, for the law does not raise a fiction to accomplish a wrong.   And thus again we come to the proposition that the real truth must be ascertained, and when ascertained must control.   And that real truth is that the defendants repudiated and did not ratify the unauthorized act of McKim. The whole force of a ratification lies in conscious and intended assent with full knowledge of the facts.   If there is no such intent and no such volition, but a contrary intent and an opposite purpose, there is no ratification.   The absence of any such intent and the presence of a different one is clearly disclosed by the facts.

Of course, the question discussed is vital to the controversy. Under the law, both of this state and of Virginia, one may be, as we said in the former opinion, a holder of stock without being, in the full sense of the term, a stockholder.   Our statute of 1848, as to manufacturing corporations (Chap. 140, § 16), and that of 1850, as to railroads, recognized that a person may hold shares as collateral without being liable to assessment; and it rests upon the obvious ground that the pledgor, in whose name the stock is registered, remains the general owner, notwithstanding the pledge, and the company cannot treat him otherwise, nor practically claim that both pledgor and pledgee are at the same time stockholders of the same stock.   The pledgor remains liable; the pledgee never becomes so.   The statute of Virginia (Code of 1860, ch. 57, § 25) makes those and only those stockholders, "as it respects the company,"

whose names are registered on its books as such; and that enactment, thus requiring an acceptance and recognition of the stockholder by the corporation, shows that it is a contract relation which is contemplated and involves an actual assent on both sides. The seeming intimation ventured on behalf of the appellant that the effect of that act is to make one conclusively a stockholder whose name was registered, whether he knew and assented or not, is too plainly unendurable to require serious discussion. No one can be made a stockholder without his consent, express or implied. And so there is no view of the subject which can dispense with proof of that assent by the defendants as a vital and necessary element of the plaintiff's case.

We have said that there is no proof of such assent. The appellant's counsel, however, insist that there is *some* proof of it, and enough to raise a controverted question of fact upon which the verdict directed by the court is as conclusive upon us as would be the verdict of a jury. That we are quite sure is a mistake. We discover no such proof. To find any it would be necessary to separate some single fact from its surroundings and pervert the just inference to be drawn from it. Neither party asked to go to the jury. Both assumed that the material facts were undisputed. The defendants upon them raised a question of law by a motion for a nonsuit, which was denied and an exception taken. Judgment was suspended and the exceptions ordered to be heard at the General Term. The plaintiff was required to go there for his judgment and get it by defeating the exceptions. He made the case himself with that notice and peril before him, and it is not to be presumed that he omitted anything essential. The judgment of the General Term determined that assent to the stockholder's relation was necessary to be proved but that there was no evidence to prove it, but on the contrary proof of express dissent. In that view we concurred and decided not a question of fact but one of law.

Much more might be said as a commentary upon the plaintiff's brief, but the cause of action sued upon is already about

a quarter of a century old, and will grow still more venerable if we do not somewhere end the discussion.

The motion should be denied, with costs.

All concur.

Motion denied.