### KENYON v. FOWLER.

(Circuit Court of Appeals, Second Circuit. June 10, 1907.)

#### No. 286.

BANKS AND BANKING—NATIONAL BANKS—LIABILITY OF STOCKHOLDERS OF RECORD.

One who was notified that shares of stock in a national bank had been transferred into his name, although he had in fact no interest therein, and who indorsed the certificates in blank, but took no steps to have the stock transferred to the name of the true owner, cannot avoid liability for an assessment thereon made by the comptroller to meet the debts of the bank after its insolvency.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Banks and Banking, § 916.

Who liable as shareholders in national banks, see notes to Beal v. Essex Savings Bank, 15 C. C. A. 130; Earle v. Carson, 46 C. C. A. 503.]

In Error to the Circuit Court of the United States for the Northern District of New York.

D. R. Cobb, for plaintiff in error.

Fowler, Crouch & Vann, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The action was brought by the receiver of the American Exchange National Bank of Syracuse to recover an assessment on 40 shares of stock standing in the name of the defendant on the books of the bank. The defense is that the stock was issued, and his name as owner entered upon the books, without his knowledge or consent.

It is apparent that the record does not present the entire transaction, but the salient features, so far as they appear, are as follows:

The stock register of the bank contains entries showing that on December 11, 1903, two old certificates for 20 shares each in the

name of Herman Bartels were surrendered and two new certificates for the same number of shares were issued in the name of Otis W. Kenyon, the defendant. This business was done by Carl H. Reynolds, a broker, who took the Bartels certificates to the bank, received the new certificates and receipted for them on the stubs of the scrip book. With the new certificates he went to the office of the defendant where the following interview took place:

"I told Mr. Kenyon that this was the stock of Jim Ratchford, and that Jim wanted the stock put in his [Kenyon's] name, and I told him 'here are the certificates made out in your name,' and asked him to put his name on the back of them, and assign them in blank, which he did. I took the certificates over to the office of Mr. Ratchford and delivered them to him. Never heard of them since."

The defendant testified that he first knew that his name appeared on the books of the bank some time after the failure of the bank, which occurred in February, 1904; that he never purchased any of its stock or authorized any other person to purchase for him. Regarding the interview with Reynolds he gives the following account:

"He came to my office and I was very busy, and he called me out and said, 'You are a stockholder of a bank.' He said, 'I have got the certificates here,' but I don't know whether there was one or two, 'in your name, and I wish you would assign them in blank.' I didn't even look at them; turned them on my desk bottom side up; put my name on them and he went out. I never saw them after that."

The answer contains an averment as follows:

"In the latter part of the year 1903, or early in the year 1904, one Carl H. Reynolds came to defendant's office and informed him that he had just purchased some stock in the American National Exchange Bank of Syracuse, and had taken it in his [defendant's name], and asked defendant, since he had no interest in the same, to formally assign it, which defendant then and there did."

We are of the opinion that the following facts are established:

First. The defendant's name appeared on the books of the bank as a stockholder, two certificates for 20 shares each having been issued in his name.

Second. The defendant knew that the certificates were taken in his name and he knew, or should have known, that his name appeared as a stockholder on the books of the bank.

Third. In December, 1903, the defendant duly assigned the certificates in blank and has not seen them since.

Fourth. The defendant made no effort to have his name removed from the books of the bank as a stockholder or to have the name of the legal owner of the certificates substituted.

Fifth. On August 9, 1904, the Comptroller of the Currency made an assessment of $67 per share on the stockholders of the bank pursuant to the provisions of the National Bank Act.

Upon the undisputed testimony it was the duty of the court to direct a verdict, it being manifest that there was no question of fact for the jury to determine.

It cannot be denied that the rule invoked by the plaintiff, and followed by the Circuit Court, is a severe and drastic one imposing upon the

stockholder the duty, after he has sold and assigned his stock, of seeing to it that his name is removed from the books of the bank. In the case at bar the defendant would have had no difficulty in doing this, but in many cases, where the certificates are assigned in blank and the stockholder does not know who the purchaser is, it might become an exceedingly arduous and complicated undertaking. Nevertheless, we are constrained to hold, under the authorities which must govern our action, that the court below was right in directing a verdict for the plaintiff. Harsh as the rule may seem, it is clear that it is necessary for the speedy and efficient winding up by the Comptroller of the affairs of insolvent banks. He cannot enter upon an investigation and hear proofs pro and con to determine who are the stockholders, and the reasons are manifest and cogent for holding that, in making his assessment, he is justified in relying upon statements found in books of the bank. They are at least prima facie evidence. There was nothing to indicate to the Comptroller that the defendant had parted with his stock and the defendant, with full knowledge of the facts, not only failed to repudiate the action of Reynolds in having the shares taken in his name, but took no steps to have them registered in the name of the true owner. He cannot now, as against creditors, be permitted to dispute his liability.

In Keyser v. Hitz, 133 U. S. 138, 149, 10 Sup. Ct. 290, 294, 33 L. Ed. 531, the court, says:

"We must not be understood as saying that the mere transfer of the stocks on the books of the bank, to the name of the defendant, imposed upon her the individual liability attached by law to the position of shareholder in a national banking association. If the transfers were, in fact, without her knowledge and consent, and she was not informed of what was so done—nothing more appearing—she would not be held to have assumed or incurred liability for the debts, contracts and engagements of the bank. But if, after the transfers, she joined in the application to convert the savings bank into a national bank, or in any other mode approved, ratified or acquiesced in such transfers, or accepted any of the benefits arising from the ownership of the stock thus put in her name on the books of the bank, she was liable to be treated as a shareholder, with such responsibility as the law imposes upon the shareholders of national banks."

In Finn v. Brown, 142 U. S. 56, 12 Sup. Ct. 136, 35 L. Ed. 936, 50 shares of stock were transferred to the defendant without his knowledge and consent. The court, at page 67 of 142 U. S. and page 139 of 12 Sup. Ct., said:

"He is presumed to be the owner of the stock when his name appears upon the books of the bank as such owner and the burden of proof is upon him to show that he is in fact not the owner."

The court held that being acting cashier and director of the bank he was presumed to know what the list of shareholders, required by law to be kept, contained; and, at page 70 of 142 U. S. and page 140 of 12 Sup. Ct., the court says:

"No general rule can be laid down as to what will constitute, in any particular case, an acceptance of the transfer of stock or the equivalent thereof, in a case where the transferee is in fact ignorant of the fact of transfer; but each case must be decided on its own facts. * * * The defendant, as vice-president and acting cashier of the bank, had the power himself to transfer the 40 shares back to McNany and the 10 shares back to De Walt. He did

not do so, but, knowing that the 50 shares had been transferred to his credit and stood in his name upon the books, he suffered the matter to remain in that shape for twenty days, until the doors of the bank were closed."

The judgment against him was affirmed.

See, also, Richmond v. Irons, 121 U. S. 27, 58, 7 Sup. Ct. 788, 30 L. Ed. 864; Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571; Rankin v. Insurance Co., 189 U. S. 242, 23 Sup. Ct. 553, 47 L. Ed. 792; Greene v. Sigua Iron Co., 88 Fed. 207, 215, 31 C. C. A. 458; Davis v. Stevens, 17 Blatchf. 259, Fed. Cas. No. 3,653; Lewis v. Switz (C. C.) 74 Fed. 381. We do not regard the case of Glenn v. Garth, 133 N. Y. 18, 30 N. E. 649, 31 N. E. 344, as in conflict with the views above expressed. Indeed, Judge Finch, in disposing of the motion for a reargument, recognizes the rule for which the receiver here contends. "It is insisted," he says, "that we have violated the rule that one who authorizes and permits a transfer to himself of shares of stock upon the books of a corporation must be held to be a stockholder, whether in truth the real owner or not, when the rights of corporate creditors are involved, and is equitably estopped from denying the apparent relation. I admit the rule and have nowhere doubted or denied it." The defendant was released upon the peculiar facts there developed because the transfer to him on the books was a mistake which he immediately repudiated and sought to undo. Here, on the contrary, the defendant acquiesced in the broker's acts and at no time expressed his disapproval.

The judgment is affirmed with costs.

TOWNSEND, Circuit Judge, heard the argument, participated in the consultations, and voted to affirm.