168 So. 589

## CHEAIRS v. STOLLENWERCK.

### 2 Div. 59.

Supreme Court of Alabama.

April 16, 1936.

Rehearing Denied June 11, 1936.

W. R. Withers, of Greensboro, and Keith & Wilkinson, of Selma, for appellant.

S. F. Hobbs, of Selma, for appellee.

THOMAS, Justice.

This is a suit, under the federal statute, by the receiver of the First National Bank of Greensboro, Ala., to enforce an assessment levied upon the stockholders of said bank by the Comptroller of the Currency for the United States against C. Y. Stollenwerck, a stockholder.

The assignments of error challenge the action of the trial court in refusing to give appellant's requested affirmative charges, certain parts of the oral charge to which exceptions were reserved, and in denying the motion for a new trial.

The verdict and judgment was for the defendant, and the receiver appeals.

The federal statute under which the assessment was made is as follows: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or

registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to effect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure." United States Code Annotated, title 12, p. 112, § 64.

■ "The question as to the necessity of an assessment and of proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, or if only a part how much, shall be collected, are referred to the judgment and discretion of the comptroller, and his determination is conclusive." U.S.C.A., title 12, § 64, note 41, p. 130; Casey, as Receiver, v. Galli, 94 U.S. 673, 24 L.Ed. 168; Germania National Bank of New Orleans v. Case, Receiver, 99 U.S. 628, 25 L.Ed. 448; Kennedy v. Gibson, 8 Wall. 498, 19 L.Ed. 476.

■ In the respects indicated, the decisions of the Supreme Court of the United States are binding on state courts, when construing and applying the federal statutes and the provisions of the Constitution of the United States. Handy v. Goodyear Tire & Rubber Co. et al., 230 Ala. 211, 160 So. 530; Merchants' Laclede Bank of St. Louis, Mo., v. Troy Grocery, 144 Ala. 605, 39 So. 476. That is, as to substantive rights under the federal statutes, the federal rule obtains, while the state law governs as to matters relating to practice and procedure administrative of the federal act. Illinois Cent. R. Co. v. Johnston, 205 Ala. 1, 5, 87 So. 866; Central Vermont Railway Company v. White, Adm'x, 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433; Chesapeake & Ohio Railway Company v. De Atley, 241 U.S. 310, 36 S.Ct. 564, 60 L. Ed. 1016. The question of who is a shareholder in a national bank and subject to liability as such on the call of the Comptroller of the Currency, relates to substantive rights, and is not a matter of procedure. In such a determination the scintilla rule does not prevail. Louisville & N. R. Co. v. Parker, 223 Ala. 626, 138 So. 231; Illinois Cent. R. Co. v. Johnston, supra; Board of County Commissioners

of County of Marion v. Clark, 94 U.S. 278, 24 L.Ed. 59.

■ It is established by the United States Supreme Court that one who holds himself out as the owner of shares of stock in a national bank, by allowing to appear on the books of the bank who is the registered owner, may be treated as a shareholder. Finn v. Brown, Receiver, 142 U. S. 56, 12 S.Ct. 136, 35 L.Ed. 936; Keyser, Receiver, v. Hitz, 133 U.S. 138, 10 S.Ct. 290, 33 L.Ed. 531; Turnbull v. Payson, 95 U.S. 418, 24 L.Ed. 437; see "Real and apparent owner," U.S.C.A., title 12, p. 114, § 64, note 2, and authorities cited.

■ It is likewise held that the actual owner of shares of stock may be held for an assessment, although his name does not appear upon the transfer books of the bank. Ohio Valley National Bank v. Hulitt, 204 U.S. 162, 27 S.Ct. 179, 51 L.Ed. 423, and authorities cited; U.S.C.A., title 12, § 64, note 2, p. 114; Rankin, Receiver, v. Fidelity Insurance, Trust & Safe-Deposit Company, 189 U.S. 242, 23 S.Ct. 553, 47 L.Ed. 792. This is the rule that has long prevailed in that jurisdiction. Davis v. Stevens (C.C.N.Y.1879) 7 Fed.Cas. p. 177, No. 3,653, 17 Blatchf. 259, opinion by Chief Justice Waite.

■ It follows, that one who is notified that shares of stock in a national bank have been transferred to his name, and takes no action to have the same transferred to the name of their true owner, cannot avoid liability for an assessment thereon, made by the comptroller to meet the debts of that bank after its insolvency. Kenyon v. Fowler 155 F. 107, 83 C.C.A. 567; Id., 215 U.S. 593, 30 S.Ct. 409, 54 L.Ed. 341. This rule has also been applied where a person receives dividends, and it has been held that "Where a person receives from a bank a dividend on stock which he denies owning, he should restore the dividend to the bank; he does not free himself from liability for it by giving his check on the bank for the sum to the alleged true owner." Finn v. Brown, Receiver, 142 U.S. 56, 12 S.Ct. 136, 35 L.Ed. 936; Keyser, Receiver, v. Hitz, 133 U.S. 138, 10 S.Ct. 290, 33 L.Ed. 531.

■ It has been declared by the Supreme Court of the United States that the name of an individual appearing as a shareholder on the stock books of a national bank is prima facie evidence of ownership, and, presumptively, the party so indicated is a

stockholder entitled to participate in the affairs of the bank, and subject to liability as such. In an action against him as a stockholder he has the burden of rebutting the presumption of ownership. Finn v. Brown, Receiver, 142 U.S. 56, 12 S.Ct. 136, 35 L.Ed. 936; Keyser, Receiver, v. Hitz, 133 U.S. 138, 10 S.Ct. 290, 33 L.Ed. 531; Turnbull v. Payson, 95 U.S. 418, 24 L. Ed. 437; Webster v. Upton, Assignee in Bankruptcy, 91 U.S. 65, 23 L.Ed. 384; Walsh et al. v. State ex rel. Cook et al., 199 Ala. 123, 74 So. 45, 2 A.L.R. 551.

In the recent case of Forrest v. Jack, Receiver, 294 U.S. 158, 55 S.Ct. 370, 371, 79 L.Ed. 829, 96 A.L.R. 1457, 1460, 1461, the foregoing rule of liability, contained in the earlier decisions, is adhered to, and Mr. Justice Butler, speaking for that court, said: "The liability of stockholders is based upon the statute, 12 U.S.C.A. § 64. McClaine v. Rankin, 197 U.S. 154, 161, 25 S.Ct. 410, 49 L.Ed. 702, 705, 3 Ann.Cas. 500; Christopher v. Norvell, 201 U.S. 216, 225, 26 S.Ct. 502, 50 L.Ed. 732, 736, 5 Ann.Cas. 740. * * * As a general rule, the person in whose name the stock stands on the books of the bank is liable, Whitney v. Butler, 118 U.S. 655, 660, 7 S.Ct. 61, 30 L.Ed. 266, 268; Richmond v. Irons, 121 U.S. 27, 58, 7 S.Ct. 788, 30 L.Ed. 864, 874, * * * but the actual owner may be held although the stock has not been registered in his name. Early v. Richardson, 280 U.S. 496, 499, 50 S.Ct. 176, 74 L.Ed. 575, 577, 69 A.L.R. 658; Ohio Valley Nat. Bank v. Hulitt, 204 U.S. 162, 168, 27 S. Ct. 179, 51 L.Ed. 423, 427. * * * The liability does not altogether cease on the death of the owner but, as limited and defined by section 66 [U.S.C.A., title 12], attaches to his estate. Matteson v. Dent, 176 U.S. 521, 524, 20 S.Ct. 419, 44 L.Ed. 571, 573; Zimmerman v. Carpenter (C. C.) 84 F. 747 751. * * * The fiduciaries are exempt but the property belonging to the estate is liable as would be the deceased if living. No cause of action arises until the assessment is made by the Comptroller and, so far as concerns the need and amount, his findings are conclusive. Kennedy v. Gibson, 8 Wall. 498, 505, 19 L.Ed. 476, 478; * * * Rankin v. Barton, 199 U.S. 228, 232, 26 S.Ct. 29, 50 L.Ed. 163, 166. He acts under federal authority and in respect of determinations, orders, and assessments may not be trammeled, controlled, or prevented by state laws. Rankin v. Barton, 199 U.S. 228, 232, 26 S.Ct. 29,

50 L.Ed. 163, 166; Christopher v. Norvell, 201 U.S. 216, 225, 26 S.Ct. 502, 50 L.Ed. 732, 736, 5 Ann.Cas. 740. * * * In the absence of federal enactments relating to procedure for enforcement of the liability imposed by section 66, collection is to be made in accordance with state laws governing claims against estates of deceased persons at least to the extent that such laws are not inconsistent with enforcement of the liability imposed by national authority. McClaine v. Rankin, 197 U.S. 154, 158, 25 S.Ct. 410, 49 L.Ed. 702, 704, 3 Ann.Cas. 500; * * * Williams v. Cobb, 242 U. S. 307, 37 S.Ct. 115, 61 L.Ed. 325."

Many federal decisions are collected in the notes to 2 A.L.R. page 551, reporting our decision of Walsh et al. v. State ex rel. Cook et al., 199 Ala. 123, 74 So. 45.

The trial court refused the plaintiff's written charges, declaring the burden of proof under the rule and evidence to be adjudged by the federal rule. And to this action of the trial court we will advert.

The original stock books containing certificates of stock, stub receipts, and dividend check were certified to this court and are in evidence. They show ownership of the shares in question in defendant, and that he receipted therefor.

The record recites the following in the course of examination of the witness Erwin:

"My name is Cad Erwin and I was employed by the First National Bank of Greensboro, Alabama, for 22 years prior to the time it closed. I was individual bookkeeper, general bookkeeper, assistant cashier, and cashier, and also paying teller of said bank. Said bank was declared insolvent on the 22nd day of July, 1931. I am familiar with the books of said bank.

"The witness was thereupon handed stock ledger book of the First National Bank of Greensboro, Alabama, and he further testified that the book handed him was the stock ledger of said bank; that it was a book of original entry kept in the due course of business; that according to the best of his knowledge, information and belief the entries therein contained were correct. The witness thereupon turned to page 64 of said ledger and stated that said page showed the account of C. Y. Stollenwerck; namely, twenty shares of stock held by him. He further stated that each

share of stock was of the par value of one hundred ·dollars.

"The plaintiff thereupon offered in evidence page 64 of said stock ledger.

Certificate
No. 199

For _____ Ten _____ Shares

Issued to
C. Y. Stollenwerck

Dated _____ Jan. 17 _____ 1929

Transferred from
Chas. Stollenwerck

| Dated | 12/6/24 | 1929 |
|---|---|---|
| No. Original Certificate 127 | No. Original Shares 10 | No. Shares Transferred 10 |

Received this Certificate
C. Y. Stollenwerck

\* \* \*

at the bottom of each appearing the signature of C. Y. Stollenwerck.

Certificate
No. 200

For _____ Ten _____ Shares

Issued to
C. Y. Stollenwerck

Dated _____ Jan. 17 _____ 1929

Transferred from
Chas. Stollenwerck

| Dated | 12/6 | 1904 |
|---|---|---|
| No. Original Certificate 128 | No. Original Shares 10 | No. Shares Transferred 10 |

Received this Certificate
C. Y. Stollenwerck

C. Y. Stollenwerck

| Date 1929 | Names | Certificates of Stock | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | Issued | | Surrendered | | Outstanding | | |
| | | Cert. No. | No. Shares | Cert. No. | No. Shares | Cert. No. | No. Shares | |
| Jany. 17: 17: | | 199 200 | 10 10 | | | 199 200 | 20 | |

"The witness further testified that said book was used for the purpose of determining the amount of stock each individual held in the First National Bank.

"Counsel for the plaintiff then handed to the witness stock certificate book of the First National Bank of Greensboro in reference to which the witness testified that this was the book from which certificates of stock were issued; that two certificates of stock were issued from that book to C. Y. Stollenwerck; that each certificate was for ten shares each; and that certificates so issued to Stollenwerck were Nos. 199 and 200, as shown by the stubs in said book.

"Witness further testified that he knew Mr. Stollenwerck's signature, and that it was his signature on stubs Nos. 199 and 200 in said book, and that the entries contained in the certificate of stock book were true and correct. Counsel for the plaintiff then offered in evidence stubs Nos. 199 and 200

"On cross examination the witness testified:

"That each stub showed from whom that stock had been transferred; that the stock was transferred from Chas. Stollenwerck, a brother of C. Y. Stollenwerck, under date of January 17, 1929; that stock certificates Nos. 200 and 199 were issued on the same date; that the stubs show this; that said book is correct; that they show transfer from Chas. Stollenwerck of these two certificates and that they were transferred to C. Y. Stollenwerck under date of January 17, 1929.

"The witness testified that Chas. Stollenwerck had been dead eighteen months before the date of this transfer, January 17th, 1929; that he did not know whether anyone was ever authorized to do anything with his property, and that he did not know whether C. Y. Stollenwerck ever saw those stock certificates.

"In signing the stock certificate he was told what it was, or he knew what it was. He signed those stubs. I cannot say whether the stock certificates were in the bank or not. My recollection is that they were in one of the drawers in the filing cabinet in the bank. They were not in a private drawer along with C. Y. Stollenwerck's papers, but were in one in which were kept the papers for customers. My recollection is that he had a tin box and he may have had a lock box where he kept his private papers. I never delivered these stock certificates to C. Y. Stollenwerck."

Witness Erwin further testified that the books of the bank were correctly kept in tne due course of business; were true and correct; showed a correct list of the stockholders; that the certificate book and ledger in question "are the only records of the bank showing anything with reference to the capital stock"; that dividends were regularly declared "on approximately January 1, 1929"; that "when Mr. Stollenwerck receipted for the stock issued to him he asked" witness " 'what the stock was worth?' I told him the book value was one hundred fifty. He asked if I thought the stock was a good buy at one hundred forty-five. I told him that it was. I had a conversation with him as to whether the stock was a good buy at a certain price. After Mr. Stollenwerck purchased this stock a dividend check was issued to him. I think I made it out. I do not remember the amount. I have seen the check and it has his name on the back. The name on the back was C. Y. Stollenwerck."

The dividend check referred to by the witness Erwin is as follows:

"The First National Bank No. ———
"Greensboro, Ala. Jan 18 1929.
"Pay To The Order of Mr. C. Y. Stollenwerck $100.00 One Hundred Dollars
Dividend #50.
"Cad Erwin
"Cashier."

Defendant, as a witness in his own behalf, testified:

"J. A. Blunt was president of the First National Bank at the time it closed. He had been president for a number of years prior to the time it closed. My brother, Charles Stollenwerck, was employed in that bank for some years prior to his death. Mr. J. A. Blunt had my confidence and esteem during the years of his presidency.

"On a number of occasions Mr. Blunt requested me to sign papers for which I received nothing. He had my implicit confidence. We had been intimate friends. I do not recall anything that he asked of me that I did not grant. A great number of times I signed notes and other papers at his request for which I received no benefit. Mr. Blunt had also been a life long friend of my brother. The First National Bank of Greensboro was the bank with which I did business. Mr. Blunt extended me credit time after time when I needed it. Whatever he requested me to sign, I signed. That happened for a number of years. My brother, Charles Stollenwerck died about the first of March, 1928. He had been dead nearly a year prior to the 17th of January, 1929. I have never owned any of the shares of the capital stock of the First National Bank of Greensboro, Alabama, prior to the alleged transaction testified about in this case. Sometime prior to January 17, 1929, I had a conversation with J. A. Blunt at his request—probably a day or two before. This conversation took place in the First National Bank of Greensboro, Alabama, in Mr. Blunt's office. Mr. Blunt called me from the counter and told me that he had some stock of Charles Stollenwerck that he wanted me to take off his hands to square up Charles' estate. I told him that I did not want it and had no money with which to buy it— that was Charles Stollenwerck's stock. He said that he would handle in some other way. That was all of the conversation that day. Then a day or two afterwards he asked me about the stock again and I told him that I did not want it. He said he wanted me to sign some stubs and Mr. Erwin then gave me the stub book and I signed it. In my conversation with Mr. Blunt he said that he would get rid of it (stock) to somebody. He said that he would handle it in another way and sell it to someone else. I had never seen any stock certificate made out in my name. No stock ever has been offered me by any living human being. * * * Mr. Blunt did not deliver any stock certificates to me. He did not claim that I owned any. He told me that he was going to sell them to some one else and that he needed my signature, and I signed the stubs in the presence of Mr. Erwin. I had a conversation with Mr. Erwin about it. I asked him what it was worth. I think he said the book value was 150 or 145. On the same day, or at a later date, or at some other time, Mr. Blunt came to me and asked me to sign a note and I signed it just as I had done before. No one told me that that note had anything to do with the

stock. No one told me that I was buying stock or attempting to buy it. The note was never presented for payment until after the bank closed. I never got any notice of any stockholders' meeting of the First National Bank. A short while after I signed that note Mr. Blunt presented a check to me and asked me to endorse it. At that time he did not say anything about my owning any stock. He did not mention anything about a dividend. The check was brought to me a day or two after I signed those stubs. I endorsed it. I did what he said. I did not get anything out of it. No amount was credited to my account nor was it credited to anyone elses account. I did not direct Mr. Blunt as to what to do with that money. I did not know exactly for what the check was for. It was for $100.00 or $125.00. I looked at it at the time. Mr. Blunt took the check and went out. He did not pay me any money."

And on cross-examination:

"I did not read those stubs when I signed them. I saw the stock certificates books but I never read the stubs. I endorsed the dividend check, but I did not accept it. * * *

"I signed a note a day or two after this stock was transferred from the estate. Mrs. Perry brought me that note. She did not on that occasion tender me any stock. She handed me a brown envelope and asked me what I wanted to do with it. I told her to take it back, I did not want it."

Mr. Blunt testified that he informed the defendant that his brother's stock had to be sold to meet his payments to the bank, and could be bought for $10 per share "less than the book value"; that he purchased same with his note "at 140 or 145," and witness told him he would receive the dividend in a few days, which he did get "a few days after the agreement"; that he sent the stock to defendant by Mrs. Perry, and she brought the stock back and locked it in the vault; that the bank had the right to sell the stock as collateral and it was sold by the bank for Mr. Stollenwerck's debt; that "he had borrowed money on it from his cousin in Faunsdale"; that Charles was the owner of the stock subject to debt thereon as collateral; that "Charles Stollenwerck was cashier of the bank for a long time"; that he got the stock back and locked it up in the collateral box.

Mrs. Perry, as a witness for plaintiff, testified:

"That she was assistant cashier of the First National Bank of Greensboro in 1929; that she remembered the occasion in January 1929 when she took a note to Mr. Young Stollenwerck; that she took this in a manilla envelope. At which time the following conversation took place between the witness and Mr. Stollenwerck:

" 'I took Mr. Stollenwerck this note and told him that I was instructed to bring it to him to sign. He signed it and I offered him the envelope. He did not take it. He said: "What am I going to do with those?" I said: "Put it up." He said: "You take it back to the bank and put it up for me." I took it back and put it in the box.' "

And on cross-examination: "That it is my best judgment that I said: 'Mr. Blunt asked me to bring this note to you and have you sign it.' My best recollection is that I handed him the note and he signed it. I handed him the envelope and he said: 'What am I going to do with it? I do not want it.' I said: 'You should put it up.' He said: 'Take it back to the bank and put it up for me.' "

In Keyser, Receiver, v. Hitz, 133 U.S. 138, 10 S.Ct. 290, 294, 33 L.Ed. 531, 537, Mr. Justice Harlan observes for the court: "If she became aware of the transfers after they were made, and thereafter received the dividends, she became a shareholder for all purposes of individual liability in respect to the contracts, debts, and engagements of the bank, as fully as if the transfers had been made originally with her knowledge and consent. Whether she received the dividends or not depended upon the inquiry as to whether the checks for them were indorsed by her. If she indorsed them, or either of them, she is estopped to say that she did not know their contents, and was not the owner of the shares of stock upon which the dividends were declared; for each check discloses upon its face that it was payable to her order, and was for dividends on stock standing in her name on the books of the bank. This result is not at all affected by the fact that the proceeds of the checks went to the credit of John Hitz's account as consul general. If the defendant indorsed the checks in blank or to the order of her husband, and delivered them to him, the mode in which he disposed of the proceeds is of no consequence in the present suit."

In Pacific National Bank of Boston v. Eaton, 141 U.S. 227, 11 S.Ct. 984, 985, 35 L.Ed. 702, 704, defendant made a like insistence as presented by this evidence. Mr. Justice Bradley, speaking for the court, said: "The only question to be considered, therefore, is whether the fact that the defendant in error did not call for and take her certificate of stock made any difference as to her status as a stockholder. We cannot see how it could make the slightest difference. Her actually going or sending to the bank and electing to take her share of the new stock, and paying for it in cash, and receiving a receipt for the same in the form above set forth, are acts which are fully equivalent to a subscription to the stock in writing, and the payment of the money therefor. She then became a stockholder. She was properly entered as such on the stock-book of the company, and her certificate of stock was made out, ready for her when she should call for it. It was her certificate. She could have compelled its delivery had it been refused. Whether she called for it or not was a matter of no consequence whatever in reference to her rights and duties."

In Thayer, Trustee, v. Butler, Receiver, 141 U.S. 234, 11 S.Ct. 987, 35 L.Ed. 711, the holding was, that "Where a stockholder pays to a bank the money for shares of its new stock and takes a receipt on account of subscription to new stock, and he is entered in the stock book as a stockholder and a stock certificate is made out but he never calls for it, he is a stockholder as to such new shares." Headnote 2.

And in Finn v. Brown, Receiver, 142 U. S. 56, 12 S.Ct. 136, 139, 35 L.Ed. 936, 939, Mr. Justice Blatchford observed: "The contention on the part of the defendant is that the circuit court erred in not allowing the cause to go to the jury. It is undoubtedly true, as contended by the defendant, that, as the 50 shares of stock were transferred to him originally without his knowledge and consent, he had a right to repudiate the transaction; but he is presumed to be the owner of the stock when his name appears upon the books of the bank as such owner, and the burden of proof is upon him to show that he is in fact not the owner. Webster v. Upton, 91 U.S. 65, 72 [23 L.Ed. 384, 388]; Turnbull v. Payson, 95 U.S. 418, 421 [24 L.Ed. 437, 438]; Keyser v. Hitz, 133 U.S. 138, 10 S.Ct. 290 [33 L.Ed. 531]. We think it entirely clear, on the evidence, that the defendant did not sustain such burden of proof, and that there was no question thereon for the jury."

What, then, of the plaintiff's right to the affirmative instruction requested in writing and refused by the court when tested by the federal rule? Birmingham Belt R. Co. v. Bennett, 226 Ala. 185, 146 So. 265; Louisville & N. R. Co. v. Parker, 223 Ala. 626, 138 So. 231.

In 53 Corpus Juris, pages 137, 138, § 164, the federal authorities are collected to the effect that, "While, strictly speaking, a receiver is an officer of the court and not the agent of any party, inasmuch as he acts for the benefit of all the interested parties he is sometimes loosely said to be, to that extent, the representative of all such parties. Thus in asserting his right to collect or hold assets as those of the insolvent, he may be said to claim under the latter's right and so to represent his interest, but he represents the creditors as well, and, broadly speaking, so far as he was a representative character at all he is the representative of the court and of all the parties in interest, and so he may, for the benefit of the estate, exercise all rights which any interested party may possess with reference to the property."

The Comptroller of the Currency made the call, and the suit was brought pursuant thereto by the receiver.

We are of opinion and hold that the defendant did not sustain the burden of proof to show that he was not, at the date of the suit and the trial, the true owner of the stock, and not subject to the assessment made thereon under the statute by the Comptroller of Currency, for which the suit was brought. The undisputed evidence shows he was estopped from denying that he was a stockholder and not subject to the assessment, and plaintiff was therefore entitled to the general affirmative charge. The trial court committed error in refusing such charge requested by the plaintiff.

Reversed and remanded.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.