G. A. SIMMONS, Administrator, Plaintiff in Error, *v.* M. J. ELLIS, Defendant in Error.

### April 21, 1885,

1. CORPORATIONS—MOTIONS AGAINST STOCKHOLDERS—DISTRIBUTEE OF AN ESTATE NOT A STOCKHOLDER.—A distributee of the estate of a deceased stockholder, no portion of the stock having been dis-tributed, is not liable as a stockholder on motion, under the statute, by a judgment creditor of the corporation.

2. That such a distributee refused, as administrator of the estate, to inventory the stock on the ground that it was not an asset but might become a liability does not render him liable as a stock-holder.

APPEAL from the St. Louis Circuit Court, BARCLAY. J. *Affirmed.*

H. I. D'ARCY and J. P. MAGINN, for the plaintiff in

error: Defendant having tried to work a fraud on the statute, is estopped to claim that he did not succeed in doing so.—Lowell on Transfer of Stock, p. 88 ; Lindley on Partn., vol. I., p. 128 (top) ed. Ewell ; *Taylor* v. *Taylor*, L. R. 10 Eq. 477 ; *Bowden* v. *Johnson*, 107 U. S. 261 ; Thompson on Stockholders, sect. 129 p. 150. The fact that the stock was not transferred on the books of the bank to the defendant, either as administrator or distributee is, of course, immaterial.—*Coquard* v. *Marshall*, 14 Mo. App. 80 ; *Roeder* v. *Knoebel*, 12 Mo. App. 587. Defendant is liable if the title passed, as *distributee.* He can not claim that he is only liable for one-fourth. This is so on general principles.—*Ins. Co.* v. *Hill*, 12 Mo. App. 148 ; *Bray* v. *Seligman*, 75 Mo. 31 ; Rev. Stat., sect. 737, vol. I. It is more emphatically so under our statute as to contracts.—Sect. 658, Rev. Stat., vol I., p. 106.

PHILLIPS & STEWART, for the defendant in error: The defendant is not liable as administrator.—*Stagg* v. *Linenfelser*, 59 Mo. 336 ; *Lessing* v. *Vertrees*, 32 Mo. 431 ; *Smarr* v. *McMaster*, 35 Mo. 349 ; *Cummings* v. *Wright*, 11 Mo. App. 348. Nor as an individual.—*Roeder* v. *Knoebel*, 12 Mo. App. 587; *Coquard* v. *Marshall*, 14 Mo. App. 80.

LEWIS, P. J., delivered the opinion of the court.

Nicholas Ellis, who died in 1878, was a stockholder in the Butchers and Drovers Bank, owning ten shares upon which $50 per share remained unpaid. His son, the present defendant, administered on the estate, under letters dated March 6, 1878. The bank had failed in 1877, and the administrator refused to inventory the stock on the ground that it was not an asset, but might become a liability. He made his final settlement in July, 1880, and under the order of distribution received $1,500 as a distributee. On April 7, 1881, the plaintiff's intestate, Robert Tucker, obtained a judgment against the bank for $10,880, and his execution thereon was returned *nulla bona.* On February 2, 1884, the plaintiff commenced this proceeding by motion for exe-

cution against the defendant, under Revised Statutes, section 736. The circuit court overruled the motion.

Actual or virtual ownership of stock is the root of the stockholder's liability to creditors of the corporation. Ownership, only if the enterprise prosper, may beget a profit to the holder of its stock. This contingency of profit furnishes the consideration for his implied undertaking that he will, within certain limitations, be answerable for the corporate obligations. But no law with which we are acquainted establishes or recognizes the fact of ownership, where no element of consent, express or implied, has ever developed in the alleged owner. An infant, incapable of making a binding contract, may be become an owner of property, as grantee in a deed or bequest. But here the law presumes a consent for him, from the beneficial effect of the grant. This presumption itself exemplifies the office of consent, as an indispensable element of ownership. There are cases in which a man may be held to be to an owner against his will, for the purpose of subjecting him to a lawful charge. In all such cases, however, it will be found that the person charged has in some form, either expressly or by implication, established a foundation of voluntary consent. A valuable structure, or a nuisance, may be erected on one's land against his will. But if he permit it to remain there, this permission will be a consent sufficient to charge him as owner, for assessment and taxation in the one case, or for a penal responsibility in the other. Suppose, however, a man dying bequeaths to me by last will in due form an elephant. I can make no use of the animal and the cost of its keeping would bring ruin upon me and starvation to my family. Must I be its owner, *nolens volens?* The plaintiff's learned and ingenious counsel in this case would hardly say so, although he insists that a rule of like character must be applied to the defendant here with regard to the stock in question.

If the defendant has in any way become owner of the stock, it must have been either in his representative capacity as administrator, or in his personal capacity as an

heir and distributee of the deceased stockholder's estate. If it was in the first, the plaintiff cannot prevail here, because the statutory remedy by motion for execution does not lie against an administrator.—*Cummings* v. *Wright*, 11 Mo. App. 348. The plaintiff, however, does not in this proceeding appear to hold the defendant responsible in his capacity of administrator.

We must therefore find, in order to sustain the plaintiff's case, that the defendant has in his individual right become an owner of the stock, in severalty, or else jointly with other heirs or distributees of his father's estate. But how? It does not appear that ownership has reached him through any of the ordinary channels known to the law. There has been no transfer to him on the books of the corporation,—no assignment from the former stockholder or his legal representative—no sale, no judgment or order of distribution, which could have vested the title in the defendant. He was born the son of his father, who in his lifetime was a stockholder; and this is all that can be said to prove him a stockholder also.

The plaintiff's learned counsel seems to be of opinion that defendant has become owner of the stock by some means through the fact that he was once administrator of the deceased stockholder's estate. The logic of the position appears to be about this: As administrator he could not help being owner of the stock, because the law made it his duty so to be; rendering the two relations inseparable from each other. He could not escape this duty with its legitimate consequences and liabilities, by refusing to include the stock in his inventory. Therefore, when the administration was completed and final settlement made, the administrator's title passed to the distributees, of whom the defendant was one, by operation of law, whether formally distributed to them or not. The premises may be granted. But the conclusion does not follow. It begs the whole question, or rather, assumes the very matter in controversy. The administrator's relation to the stock was only that of a qualified ownership, if an ownership at all.

The stock was the property of the estate, which he was empowered, under limitations strictly defined by law, and for special purposes also so defined, to represent. When he ceased to be administrator, the stock, if not previously disposed of under proper sanctions, was still the property of the estate. An administrator *de bonis non* might have been appointed at any time, whose right would have been unquestionable to take possession and dispose of the stock in accordance with the probate laws. Where, then, would have been the ownership of the defendant? To say that the title passed from the adminstrator to the individual without the latter's consent is not only to assume the very incongruity which the argument rejects, but also to repudiate the policy of the law, which keeps the property of deceased persons always open to final disposal as is directed by the statutes concerning executors and administrators. In descent of real estate to the heir, no administrative intervention is requisite, in the nature of things; although such intervention may check the descent, or may cut it off when this becomes necessary for the payment of debts of the decedent.

But as to personalty, where there is no distribution in specie, and no visible transfer in any shape from the estate, a party's abstract right of inheritance can never, consistently with fair reasoning or any rule of law, subject him to liabilities without some act on his part, either expressly or impliedly indicating his recognition and acceptance of the succession. This distinction clearly results from the strictness with which the law takes instant and possessory control of personalty upon the owner's death, for due administration and distribution, while it leaves the real estate to its course of descent by pure operation of law alone. It is not to be inferred, however, from what is here said, that a man may not, under property conditions, refuse the rights and responsibilities of an heir to realty, also.

There is, further, a suggestion that the administrator committed an act of fraud in refusing to inventory the

stock, and that to permit him, as a private individual, to escape the consequences of the distribution which should have followed, would be enabling him to make advantage of his own wrong. We see nothing in the suggestion. The term fraud is wholly inapplicable, in any view of the supposed dereliction. Nobody's rights were impaired by the omission. Any judgment creditor of the insolvent corporation could have proceeded against the estate without regard to the inventory or against the heirs, upon proper showing; and any person interested could have obtained an order of the probate court compelling the administrator to perfect his inventory, or could have held him responsible on his bond for the failure.—Rev. Stat., sect. 79; *Sherwood* v. *Hill*, 25 Mo. 391.

We know of no law under which the official or fiduciary dereliction, if such it was, may be punished by denying to the defendant a natural right which is wholly independent of his fiduciary relation, to-wit: the right to refuse a gift which may only be a burden. It would be quite as reasonable to defeat a man's recovery of his horse wrongfully taken, on the ground that he had, in some official capacity, done an injustice to the taker.

We find no error in the circuit court's judgment, which is therefore affirmed, with the concurrence of all the judges.