GREENE v. SIGUA IRON CO.[1]

(Circuit Court of Appeals, Second Circuit. October 21, 1896.)

1. CORPORATION—CONTRACT TO BECOME STOCKHOLDER—TRANSFER OF STOCK.

An agreement to purchase from a syndicate a certain number of shares of stock in a corporation, which had been subscribed for by the syndicate, but had not yet been issued, "or a proportionate part in case of oversubscription," is not a contract of purchase, which renders the purchaser a stockholder in the corporation on a subsequent transfer of the stock to him without his knowledge, but is merely an executory engagement to purchase, which renders him liable for damages for its breach on his failure to perform.

2. CONTRACTS—CONSIDERATION—UNILATERAL UNDERTAKING.

A writing by which the subscribers promise to purchase from the owners certain shares of stock in a corporation, but which contains no agreement on the part of the owners to sell is not a valid contract for want of consideration, but is merely a unilateral undertaking, which may be retracted by a subscriber at any time before it has been acted upon by the owners by a transfer of the stock.

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by the Sigua Iron Company against Benjamin D. Greene. Judgment for plaintiff, and defendant appeals.

Kellogg, Rose & Smith, for plaintiff in error.

Wm. B. Hornblower and Howard A. Taylor, for defendant in error.

Before WALLACE and LACOMBE, Circuit Judges, and TOWNSEND, District Judge.

WALLACE, Circuit Judge. This is a writ of error by the defendant in the court below to review a judgment for the plaintiff entered upon a verdict of a jury. The action was brought to recover of the defendant, as a stockholder of the corporation plaintiff, the amount of certain calls for installments due and unpaid upon 400 shares of stock. The assignments of error raise the question whether there was sufficient evidence in the case to support the ruling of the trial judge refusing to direct a verdict for the defendant, and leaving it to the jury to determine as an issue of fact whether the defendant ever became a stockholder of the plaintiff. It was not alleged that the defendant was liable for the calls as a stockholder of the corporation by original subscription, but the theory of the action was that he became a purchaser of 1,000 shares, and a stockholder by the transfer of those shares to him upon the books of the corporation. It appeared in evidence that certain individuals known as the "Sigua Syndicate," the promoters of the enterprise which the corporation was organized to carry on, were, by an agreement with the corporation, entitled to 29,995 shares of its capital stock, of the par value of $100 per share, subject to calls and assessments to the extent of

---

[1] This case was originally reported in 76 Fed. 947, but is now re-reported in order to supply certain sentences which were inadvertently omitted from the original copy of the opinion.

35 per cent. In May, 1890, the plaintiff and certain other persons severally signed an instrument which read as follows:

"We, the undersigned, hereby agree with the Sigua Syndicate to purchase from them, at $35 per share, the number of shares (of the par value of $100 each) set opposite our names, respectively, the same being 65 per cent. paid, and liable to further calls and assessments to the extent of 35 per cent.; said 35 per cent. being payable one-tenth, or ten per cent. thereof, on call, and the remainder as required, probably at the rate of one-tenth, or ten per cent., of said 35 per cent. every two months, or a proportionate part in case of over-subscription."

The defendant subscribed for 1,000 shares. The instrument was delivered to one Smith as trustee for the syndicate. July 8, 1890, the corporation duly issued a certificate to Smith, as trustee for the syndicate, for the 29,995 shares. July 9, 1890, Smith, as trustee, executed an assignment of 1,000 of these shares to the defendant, and the corporation, upon Smith's request, transferred upon its stock ledger the 1,000 shares to the defendant, and issued two certificates therefor in the name of the defendant, one for 600 and the other for 400 shares. The defendant had previously declined to take the 400 shares, insisting that the subscription was made upon the condition that he should not be required to pay for any of the shares which he might not be able to place with or sell to other persons, and that he had been unable to dispose of 400 shares. He afterwards accepted the certificate for 600 shares, but did not take the one for 400 shares, and it was not delivered to him, but thereafter always remained in the possession of the corporation. Calls for payment of installments were duly made by the board of directors from time to time, but no notice of a call was ever sent to the defendant. The amount due on unpaid installments of 400 shares at the time of the trial was $14,000 principal and $5,790.96 interest; in all, $19,790.96. For this amount the jury rendered a verdict for the plaintiff. The trial judge seems to have assumed that the subscription by the defendant evidenced a purchase of the shares, and instructed the jury that it was of itself a sufficient authorization to the corporation to make the transfer upon its books to defendant.

It is entirely clear that a person cannot be constituted a shareholder in a corporation by a transfer of shares without his consent. The transfer of shares on the books to a person who refuses to accept them or recognize the act in any way does not change his position in regard to the corporation. That a purchase of shares from an existing stockholder, which is sufficient, as between the parties, to devest the title of the vendor, and vest it in the vendee, and is intended to do so, is of itself an implied delegation of authority to the vendor, consequently to the corporation, to cause the requisite transfer to be made upon the books of the corporation, we do not doubt. The vendor is entitled, as against the vendee, to be relieved from further liability as a stockholder, and the vendee is entitled, as against the vendor, to all the rights of a stockholder; and the intention of the parties cannot be fully effectuated without the transfer upon the books. The very essence of such a contract is that the seller shall

relinquish and be relieved from, and the purchaser assume, all future benefits and liabilities in respect of the shares. Grissell v. Bristowe, L. R. 3 C. P. 112. Because the vendor is entitled to be relieved from these liabilities, it has been held that, where he has been obliged to pay the debts of the corporation in consequence of the failure of the vendee to cause the transfer to be made upon the books, he may recover the amount so paid in an appropriate action. Johnson v. Underhill, 52 N. Y. 203; Castellan v. Hobson, L. R. 10 Eq. 47; Walker v. Bartlett, 18 C. B. 845; Wynne v. Price, 3 De Gex & S. 310. In Webster v. Upton, 91 U. S. 65, the court declared that it was the duty of the vendor of shares to make the transfer to the purchaser on the books of the company, and that the purchase was of itself an authority to the vendor to cause such a transfer to be made. The court said: "It is clear that the vendor may himself request the transfer to be made, and that when it is made at his request the buyer becomes responsible for subsequent calls." See, also, Wheeler v. Millar, 90 N. Y. 353. It was held in Glenn v. Garth, 133 N. Y. 18, 30 N. E. 649, and 31 N. E. 344, that a broker who had purchased shares from another broker without giving the latter express authority to cause the transfer to be made upon the books of the corporation did not become a stockholder notwithstanding the selling broker had caused the transfer to be made. This doctrine would result either in compelling a vendor whose shares have been purchased to continue to be a stockholder, and subject to all the liabilities of that relation, or in relieving both vendor and vendee from the obligations of that relation to the corporation and its creditors. But it is unnecessary to consider the question upon principle, as the adjudication in Webster v. Upton is controlling upon this court. If by agreement between the defendant and the Sigua Syndicate the defendant had acquired the title to the 1,000 shares, the doctrine stated would be applicable. But the subscription did not vest in him any particular shares or number of shares, and was not intended to do so. When it was signed, the syndicate did not have legal title to the shares, because they had not at that time been transferred to the syndicate upon the books of the company. It was uncertain how many of the shares were eventually to be taken by the defendant. He promised to purchase a thousand shares, "or a proportionate part in case of oversubscription." It was merely an executory engagement for the purchase of shares, which, if it had been valid, would have rendered the defendant liable in damages for a breach upon his refusal to perform. But it was not a valid contract because of want of consideration. Bish. Cont. § 77.

The subscription was a purely unilateral undertaking, without any concurrent undertaking on the part of the syndicate. If the syndicate had refused to transfer the shares to the defendant, and he had sought redress for his damages, it would have been a complete answer to his action that there was no promise on the part of the syndicate to transfer to him any shares.

Whether a consideration is necessary to support the promise of a stockholder by subscription, and how the consideration is consid-

tuted, are questions which have been much discussed; and, as is said by a recent commentator, "the courts, in their search for the consideration of such a contract, have indulged in a variety of speculations more curious than useful." Thomp. Corp. § 1200. The most approved reasoning seems to be that upon the acceptance by the corporation of the subscription the subscriber is immediately invested with the privileges of a stockholder, and the rights thus acquired are a sufficient consideration for his promise. But, as is pointed out by Mr. Morawetz (Priv. Corp. § 134):

"This reasoning has no application in case of a contract to purchase shares, or to become a shareholder in a corporation at a future time. A contract of this description is an ordinary common-law contract, and is subject to all the technical rules governing common-law contracts. The promise to pay for shares, and the corresponding promise to deliver them, or to receive the purchaser as a shareholder, are concurrent, and each constitutes the consideration for the other. Without a consideration neither promise would be binding."

There are unilateral contracts, which are, in effect, a request or proposal to the promisee, in which it is not necessary that the consideration should exist at the time of making the promise, and where, if the promisee acts upon the promise, it becomes obligatory; but in this class of contracts the promisor may always retract before performance by the promisee, and in the intermediate time the promise is inert. That a unilateral promise to sell cannot be enforced by a party who has not agreed to buy, but subsequently notifies his acceptance of the offer to sell, was decided as long ago as the case of Cooke v. Oxley, 3 Term R. 653. Inasmuch as the defendant retracted his promise before the shares were transferred to him, it is unnecessary to consider whether his subscription can be regarded as belonging to the class of unilateral contracts which have been referred to. The case is one where the defendant never became a stockholder of the corporation, and because the trial judge declined to direct a verdict for the defendant upon this ground we conclude that the judgment should be reversed.

### Application for Reargument.

(December 8, 1896.)

WALLACE, Circuit Judge. The application which has been made for a reargument of this cause is based largely upon the ground that the points upon which the decision of the court proceeds were not discussed in argument or upon the briefs. The fundamental proposition which it was incumbent upon the plaintiff to establish was that the defendant became a stockholder of the corporation as to the shares in controversy by reason of a transfer of those shares to him upon the books of the corporation; and it was of course essential that the plaintiff demonstrate that the transfer was duly authorized by the defendant. No authority from him was shown, or was claimed to exist, except such as could be implied from the contract with the Sigua Syndicate. The plaintiff insisted that this contract evidenced a purchase of the shares, and consequently imported authority to

the vendor and to the corporation to transfer the shares upon its books and treat the defendant as a stockholder. We held the contrary, being of opinion that the contract was merely an executory agreement to purchase, and not a present contract of purchase. If this point was not discussed, we can only say that it was the basic point in the case, and a decision could not have been properly reached by the court without considering it and deciding it. As we entertain no doubt of the correctness of the judgment upon this point, and as all the other grounds of the application for a reargument relate to subsidiary questions not affecting the primary one which lies at the very threshold of the controversy, we do not think a reargument would be profitable, and the application is therefore denied.