W. B. BEDENBAUGH, as Liquidator of Merchants & Planters Bank of Sneads, v. EDNA EARLE LAWRENCE, PAULEAN LAWRENCE, MRS. TENNIE MERCER, HUBERT L. MERCER, MILDRED MERCER, CARLTON MERCER and NELLIE WADE WHIDDON.

193 So. 74

Division B

Opinion Filed January 12, 1940

*James H. Finch,* for Appellant;

*Carter & Pierce* and *B. L. Solomon,* for Appellees.

BROWN, J.—This is an appeal from an order dismissing an amended bill of complaint.

On November 21, 1921, W. H. Whiddon died intestate in Jackson County, Florida, leaving an estate consisting of described real estate, various articles of personal property and fifteen shares of the capital stock of the Merchants &

Planters Bank of Sneads, Florida, of the par value of
$100.00 each. On December 21, 1921, decedent's widow,
Mrs. Tennie Whiddon (later by remarriage Mrs. Tennie
Whiddon Mercer) was appointed and qualified as ad-
ministratrix of the estate; proceeded to administer the estate
by paying the debts and obligations that were then due and
owing and payable against the estate; and on September 6,
1927, was duly discharged as administratrix by the County
Judge's Court of Jackson County. There has been no
transfer, or request or offer for transfer of the ownership
of said bank stock on the books and records of the
Merchants & Planters Bank of Sneads, and there has been
no sale or division thereof among the heirs. The decedent
left as heirs-at-law, his widow, Mrs. Tennie Whiddon, and
his three children, Edna Earle Lawrence, Mildred Mercer
and Nellie Wade Whiddon. Some twelve years later, the
bank failed, and on June 12, 1936, fifteen years after the
death of W. H. Whiddon, an assessment of 60 per cent
was made against all stockholders. An assessment of
$900.00 was made by the Comptroller against "the estate"
of W. H. Whiddon, deceased. Notice thereof was given
to Mrs. Tennie Whiddon Mercer, and just prior to institu-
tion of the suit notice was given to the other heirs of W. H.
Whiddon. The liquidator of the bank sought to have an
administrator appointed for the estate, so that suit could
be brought against him, but the County Judge of Jackson
County refused to appoint one.

Plaintiff, liquidator of the Merchants & Planters Bank
of Sneads, some eleven years after W. H. Whiddon's estate
had been administered and closed, filed his amended bill of
complaint, on August 23, 1938, against the widow and the
daughters of decedent, and the respective husbands of those
that were married, praying: (1) That the amount of the

assessment ($900.00 with interest from June 13, 1936) be adjudged a debt or liability of the estate of W. H. Whiddon, deceased, and a debt and liability of the defendants, each to the extent of a one-fourth share thereof, by reason of their ownership of said bank stock, vested in them by virtue of the law of descent. (2) That a lien be impressed in favor of plaintiff upon the described lands for the amount of the unpaid assessment, with interest since the date thereof. (3) That plaintiff's right to subject said lands to payment of said assessment with interest be adjudged superior to any right of defendants, or any of them, therein. (4) That a receiver be appointed to take charge of the lands and enforce payment of said assessment, and that said lands, or so much thereof as may be required, be sold by and under the direction of the court, to pay said stock assessment. (5) And that during pendency of this suit, the defendants be enjoined from making any division, partition or sale of said lands, and be also enjoined from further prosecuting the partition suit which had been instituted by the defendants.

*Lis pendens* notice was filed as to all of the lands involved. Defendants filed a motion to dismiss the amended bill of complaint substantially on these grounds: (1) There is no equity in the bill. (2) When the bank suspended operations and the assessment was made, the record owner of the stock, W. H. Whiddon, was dead, the administratrix of his estate had been duly discharged, there had been no transfer of said stock on the books of the bank, the estate is not liable for said assessment and neither is the property that has passed into the hands of his heirs. (3) Liability for an assessment on bank stock is limited against stockholders, or the executor, administrator, guardian or trustee thereof to the extent of the funds in their hands, and the

law does not provide for enforcement of such assessment against lands of such stockholder descended to his heirs. (4) After an estate has been administered, the administratrix duly discharged, and the estate closed, lands descended to the heirs cannot be charged for payment of said bank stock assessment. (5) Neither since decedent's ·death nor since discharge of administratrix have any of defendants exercised any control or ownership over said shares of stock. (6) The debt or demand represented by said bank stock assessment was not presented to the administratrix or filed in the office of the county judge within the time provided by law for presentation of claims against estates, it not being alleged that the administratrix failed to publish notice to creditors. (7) The laws of Florida in effect at the time of the death of W. H. Whiddon prescribed the only and exclusive procedure for charging decedent's real estate for such debts, and such method has not been and cannot now be invoked. (8) It is contrary to the public policy of this State that real estate of a decedent descended to his heirs, after administration of his estate has been duly closed, be charged and sold for payment of assessment on bank stock standing in name of decedent, more than sixteen years after his death, in absence of showing that his heirs ·ever exercised any control or ownership over said stock. (9) After lapse of more than sixteen years from death of a stockholder in a bank, equity will not lend its aid to reach real estate descended to heirs for payment of assessment on said stock, where there has been no transfer of said stock on the books of the bank, and it is not alleged that any of the heirs exercised any control or ownership over said stock, and the administratrix was duly discharged more than eight years before the assessment was made, and the bank operated as a going concern for more than ten years after decedent's death.

The court entered its order granting the motion to dismiss the amended bill of complaint.

From this order, the plaintiff took this appeal.

The question to be determined is whether or not the amended bill contained equity, and in order to determine this, it is necessary to determine whether or not real estate that had descended to heirs of an intestate could be reached to pay for an assessment on bank stock still standing in the name of decedent, when deceased died in 1921, the estate was administered and the administratrix duly discharged in 1927, and the bank assessment was made, not against the heirs, but against "the estate" of the decedent, in 1936.

Section 6059 (4128) C. G. L., 1927, relating to liability of stockholders in banks provides:

"Stockholders of every banking company shall be held individually responsible equally and ratably and not for one another for all contracts, debts and engagements of such company to the extent of the amount of their stock therein at the par value thereof in addition to the amount invested in such shares. Persons holding stock as executors, administrators, guardians or trustees shall not be personally subject to any liability as stockholders, but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward or person interested in trust funds would be, if living and competent to hold the stock in his own name."

"The first part of this statute, Sec. 6059 (4128) C. G. L., is similar to the language found in 12 U. S. C. A. 64, which is in part as follows:

"The stockholders of every national banking association shall be held individually responsible for all contracts, debts and engagements of such association, each to the amount

of his stock therein, at the par value thereof in addition to the amount invested in such stock. * * * "

The latter part of our statute, Sec. 6059 (4128) C. G. L., contains almost the identical language found in 12 U. S. C. A. 66, which is as follows:

"Persons holding stock as executors, administrators, guardians or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

The construction placed upon these federal statutes, 12 U. S. C. A. 64, though not binding upon this Court, will be considered as persuasive authority.

The liability of stockholders in a banking company for its obligations is primarily *contractual* and any acquisition of the stock implies assent of the owner to the statutory conditions under which the corporation is organized. See Tunnicliffe v. Noyes, 101 Fla. 794, 135 So. 505; Chavous v. Gornto, 89 Fla. 12, 102 So. 754; McNeill v. Pace, 69 Fla. 349, 68 So. 177; Bryan v. Bullock, 84 Fla. 179, 93 So. 182; Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864.

The purchase by W. H. Whiddon, in his lifetime, of the stock in the Merchants & Planters Bank of Sneads, implied, therefore, his assent to the onerous burden of double liability imposed on stockholders in banks in this State by Sec. 6059 (4128) C. G. L. The statute makes all stockholders equally and ratably liable and not one for the other. The double liability of stockholders created by statute is for the benefit of creditors of the bank. Scott v. Latimer, 89

Fed. 843, 33 C. C. A. 1; Ames v. American National Bank of Portsmouth, 163 Va. 1, 176 S. E. 204.

The Comptroller's determination of the amount of the assessment against the stockholder and the necessity therefor is conclusive. See Crawford v. Gamble, 57 Fed. (2d) 15; Davis v. Gamble, 57 Fed. (2d) 17; Aldrich v. Campbell, 97 Fed. 663, 38 C. C. A. 347; Hay v. Wilkinson, 72 Fed. (2d) 201; and cannot be questioned by stockholders in any collateral attack in defense to an action for the assessment (Hays v. Wilkinson, 72 Fed. (2d) 201; B. V. Emery & Co. v. Wilkinson, 72 Fed. (2d) 10), because the ultimate liability of the stockholder is for the full amount of the par value of the stock, and a mistake of the Comptroller in making an estimate of the amount of a needed assessment does not release the stockholder from full liability. See Aldrich v. Yates, 97 Fed. 78.

Under this rule, therefore, *the amount* of the assessment could not be questioned by the stockholder.

The amended bill alleged in substance that at the time of the death of W. H. Whiddon he owned fifteen shares of stock of the Merchants & Planters Bank of Sneads, of the par value of $100.00, which has been since his death and now is the property of the estate of W. H. Whiddon, and that title therein has been vested, by operation of law, in the defendants, each owning an undivided one-fourth interest in the stock, title to the stock passing to the defendants on discharge of the administratrix. The next paragraph of the amended bill alleged that said stock "so owned and held by the said W. H. Whiddon at the time of his death, has not been administered, sold, partitioned, or otherwise disposed of, and that the same still remains the property of the estate of W. H. Whiddon, deceased, and of the defendants, as hereinabove set out." The next para-

graph alleges that the *assessment was made "against the estate"* of *W. H. Whiddon, deceased.* The effect of all of these allegations is that *"the estate"* against which the assessment was made, was sought to be held liable for the assessment, and under these allegations the heirs could not be held liable. Furthermore, when the assessment was made, the estate of W. H. Whiddon had long since been fully administered upon, and had therefore been extinguished.

The bank's books are prima facie correct on the ownership of stock therein. See Ely v. Gamble, 75 Fed. (2d) 171; Schlener v. Davis, 75 Fed. (2d) 361, 99 A. L. R. 498; Cheairs v. Stollenwerck, 232 Ala. 546, 168 So. 589. The stock in this case was registered on the books of the bank in the name of W. H. Whiddon. After his death, it still stood in his name, and was presumptively property of his estate. Taking this presumption of law together with the allegations that the stock had not been "administered, sold, partitioned or otherwise disposed of" and "an assessment was duly and lawfully made by the Honorable J. M. Lee, as Comptroller of the State of Florida, against the estate of W. H. Whiddon, deceased," makes it conclusive on the pleadings before us that the stock was property of the estate, as long as there was such an estate, and that only the estate could have been held liable for the assessment as made. And as the estate was no longer in existence when the assessment was made against it, the assessment as made was probably ineffectual, but we can decide this case without ruling on that point.

In the case of Austin v. Strong, 117 Rex. 263, 1 S. W. (2d) 872, 79 A. L. R. 1528, the deceased husband, during his lifetime, owned bank stock. He died intestate. There was no administration and no necessity therefor, as he left

no child, or children, or their descendants. His widow was the sole person under the law to whom the community estate would go. Later the bank became insolvent. The husband left no estate subject to payment of debts. The widow sued to recover a sum or deposit in the closed bank, and the bank attempted to set-off the stock assessment against it. The court there said:

"Since the relation of stockholder in a State bank can only be created by contract, express or implied, it necessarily follows that such relation, with its attendant liability, cannot be forced upon appellee by operation of the statute of descent and distribution. The statute could only operate to vest such right and title to the bank stock, owned by her husband at the time of his death, as would enable her to become a stockholder in the bank, if she desired to do so. Her husband, in his lifetime, was accorded the right of choosing whether he would become a stockholder in this bank. There is no legal basis for denying the wife the same privilege. It has been repeatedly held that even if stock is issued to one with his knowledge, but without his consent, this fact alone does not render him liable as a stockholder. Green v. Sigua Iron Co., 22 C. C. A. 636, 45 U. S. App. 162, 207, 76 Fed. 947; Carey v. Williams, 25 C. C. A. 227, 51 U. S. App. 204, 79 Fed. 906; Sigua Iron Co. v. Green, 44 C. C. A. 221, 104 Fed. 856; certiorari denied, 180 U. S. 637, 45 L. Ed. 710, 21 Sup. Ct. 920; Mudgett v. Horrell, 33 Cal. 25; Girard Life An. & Tr. Co. v. Loving, 71 Kan. 558, 81 Pac. 200, 3 A. L. R. 1049.

"It is true the death of appellee's husband brought into operation certain laws affecting her status. The same was not so changed, however, that the law can make for her a contract, imposing burdensome personal liabilities, which she is not desirous of entering into. In so far as the

creation of the relation of stockholder to the bank is concerned, her rights are not different from what they were at the time her husband was living. She could not then have been forced to become a stockholder in this bank. She cannot now be compelled to assume such status. The relation cannot be created with her in any other and different way than it could have been during her husband's lifetime.

"If the relation of a stockholder to a bank can be thus forced upon an heir, without consent, by virtue of the operation of the inheritance statute, then it cannot be said that it is in any sense contractual, as one of the essential elements of a contract is the voluntary assent of the parties thereto. When such assent is lacking there can be no contract. In the absence of a contract, there is no basis for a personal responsibility."

In this connection see also *In Re:* Bingham, 127 N. Y. 296, 27 N. E. 1055; Andrew v. Dunn, 202 Iowa 364, 210 N. W. 425; Camp v. Levoy, 19 Ohio C. C. 334, 10 Ohio C. D. 509; Simmons v. Ellis, 17 Mo. App. 470.

There are cases holding a contrary view, but we think this line of authorities is supported by the stronger and more compelling reasoning. Zollmann in his work on Banks and Banking, Vol. 3 (Perm. Ed.) 272, Sec. 1721, states the rule to be:

"The relationship of stockholder with its attendant liabilities is not forced upon the heir of the stockholder by the statute of descent and distribution. Such statute only operates to vest in him such rights and titles in the stock as to enable him to become a stockholder if he so desires. The law does not make a contract for him imposing burdensome personal liabilities which he does not desire to assume. Otherwise any person might awake at any time to find the accumulations of a lifetime swept away because of the

death of an ancestor to whom he happens to be the sole heir. A legatee of such stock of course may assume such liability of his own free choice, and, if he does, he will be liable, and the estate, it seems, is discharged of liability."

The case of Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571, is not inconsistent with the view adopted here, because in that case the probate court had allotted to the heirs the bank stock in question, though it had not been transferred to their names on the books of the bank. But there is no allegation in the amended bill in this case to indicate a similar situation here. Therefore, there could not, under the allegations here, be any liability imposed on the heirs of W. H. Whiddon, deceased. Only the estate could possibly have been held liable for the assessment.

The next succeeding inquiry then is whether when only the estate of decedent might have been held liable for the stockholder's assessment, real estate that had descended to the heirs of intestate could be reached to satisfy this liability long after the administration of the estate had been closed and the administratrix discharged.

The intestate died in 1921, and in December of 1921, the administratrix of the estate was appointed. The statute of non-claim in effect at that time was Sec. 3739 R. G. S. 1920, which was derived from Section 39 of an Act of the Territorial Legislature of November 20, 1828. This section provided: "All *debts* and *demands* of *whatsoever nature* against the estate of any testator or intestate which shall not be presented to the executor or administrator within the said two years after the first publication of the notice provided for by Section 3732, shall forever afterward be barred: * * *." (Emphasis ours.)

This was carried forward as Section 5611 C. G. L., 1927.

In interpreting the effect of this statute, the Supreme Court of Florida, in the case of Fillyau v. Laverty, 3 Fla. 72, 104 said:

"All our statutes in relation to the estates of decedents bear upon their face the determination that estates shall be settled as speedily as possible. The Legislature saw the evil results which would almost inevitably ensue, if estates remained a long time unsettled, arising from the expense of administration, the *detention of property from the legitimate* and appropriate *owners,* the presentation of *stale demands,* and the litigation springing out of them.

"To obviate these mischiefs, various statutes were passed, all having the same object, all converging to one point, the *speedy settlement of estates.* * * *

"Much stress is laid upon the fact that this statute is of a stringent nature, but for that reason it is not to be disregarded; and if the law-making power prescribed a rigid *rule, a corresponding rigid observance must follow,* and is as much a duty, as though the rule was more mild, qualified, or equitable. Legal morality can draw no distinction.

"This statute is *virtually a statute of limitations,* passed not only for the security of the legal representatives, but for the *benefit of the heirs* and distributees, to effect the *speedy and final settlement of estates.*

"By it, and the statute preceeding it (Sec. 2), the executor or administrator is enabled to ascretain what debts or demands are due by the estate, so that he can discover whether the estate is solvent or not; while it enables the distributees or legatees to demand distribution of the estate, unless it be necessary for the administrator or executor to retain it longer in his hands, for the purpose of paying debts. * * *

"The statute, too, seems to have contemplated the idea that legatees and distributees should *take their portions, discharged from all claims not exhibited within two years;* because the bond they give, upon receiving their portion, refers to debts or demands appearing within two years, after granting the letters testamentary or letters of administration." (Italics supplied.)

The super-added liability of stockholders in banks may be enforced against the estate of a decedent until the statute of limitations has run against it. See 3 Zollman—Banks & Banking (Perm. Ed.), Sec. 1721, p. 61, 1938 pocket part.

In the case of Smith v. Pattishall, 127 Fla. 474, 173 So. 355, this Court had before it the question of whether or not the statute of limitations had run on the right to sue the estate of a decedent for double liability on bank stock assessment. In holding that the statute of limitations had not run in that case, we said:

"Under the statutes then in force, Section 2 of Chapter 11994 of the Laws of 1927, appearing as Sections 5599, 5600, C. G. L., the liquidator of the bank had twelve months from the time of the first publication of notice to creditors within which to file his claim in the office of the county judge. Smith v. Fechheimer, 124 Fla. 757, 169 So. 395. And under Section 4648 C. G. L., said liquidator had two years from the issuance of letters of administration within which to bring suit thereon. As letters of administration were issued to the defendant administrator on or about June 30, 1933, this suit, which was begun May 23, 1935, was brought well within the two-year period designated in Section 4648 C. G. L. See Inman v. Davis (Fla), 169 So. 741. It thus appears that if these statutes, which were in full force and effect when Mary O. Beeman died, and when the administrator of her estate was appointed and qualified,

and when the proof of claim was filed, were applicable, the liquidator's claim was not barred by the statute of limitations when he brought this suit in May, 1935."

The quoted decision refers to Secs. 5599 and 5600 C. G. L., which were enacted by the Legislature of 1927. These sections were for all practical purposes but a legislative declaration of a shorter statute of limitations on the time allowed for presenting claims or demands against the estate of a decedent. The statute of non-claim expressed the same idea of a limitation of time for presenting claims and demands but allowed a longer time in which to do it. Section 5611 (3739) C. G. L. The latter statute was in effect at the death of decedent. Sec. 5599, and 5600 C. G. L. provides that "any claims or demands not so presented within twelve months * * * shall be barred by limitation." Whereas Sec. 5511 (3739) C. G. L. provides that "all debts and demands of whatsoever nature against the estate * * * which shall not be presented * * * within the said two years * * * shall forever afterward be barred." Sec. 4648 C. G: L. referred to in the quoted opinion is identical with Sec. 2928 R. G. S. 1920, in effect at the death of decedent. So from the language of Smith v. Pattishall,. 127 Fla. 474, 173 So. 355, and from the thought embodied in Fillyau v. Laverty, 13 Fla. 72, 104, it is apparent that it is a matter of public policy in this State that estates of decedents shall be *speedily* and *finally determined*. To effect this policy, statutes of non-claim and of limitations have been set up. When these limitations have expired, any and all claims of *whatsoever nature* are *barred forever*. The limitations operate against *contingent* as well as other claims or demands. The period of limitations is an effective bar both in law and equity. See Fillyau v. Laverty, 3 Fla. 72, 108.

In the case of Forrest v. Jack, 294 U. S. 158, 55 Sup..

Ct. 370, 79 L. Ed. 829, 96 A. L. R. 1457, the husband died testate owning bank stock. By his will he gave $1,000.00 to his niece and the residue of his property to his wife for life, and after her death what remained to their son and daughter equally. In 1920 the estate was closed, the administrator's accounts approved and settled, and the property ordered distributed to the widow. The widow shortly afterward deeded the real estate to her son and daughter without consideration, and died in 1931 leaving no property other than the bank stock. The stock was never assigned to her but she received the dividends. The bank failed later in 1931. In holding that the estate of the husband was not liable for the assessment, the Supreme Court of the United States said:

"In the absence of Federal enactments relating to procedure for enforcement of the liability imposed by Sec. 66, collection is to be made in accordance with State laws governing claims against estates of deceased persons at least to the extent that such laws are not inconsistent with enforcement of the liability imposed by national authority. There is no suggestion that the laws of the State of Utah discriminate against or are inadequate for the just and convenient enforcement of liability imposed (Sec. 66) against estates of deceased stockholders. There can be no liability on account of assessments made after complete administration, final distribution of all the property and the extinguishment of the estate.

"Section 102-9-28 provides: 'When the accounts of the administrator or executor have been settled and an order made for the payment of debts and distribution of the estate, no creditor whose claim was not included in the order for payment has any right to call upon the creditors who have been paid, or upon the heirs, devisees or legatees, to con-

tribute to the payment of his claim * * *.'  Viewed in the light of that provision it is plain that the distribution fully extinguished the estate.  It follows that petitioner's real estate that had belonged to decedent never became liable for the assessment,"

The situation in the instant case is somewhat different than that in Forrest v. Jack, *supra,* because in this case the bank stock still stood in the name of decedent, and no effort had been made to dispose of it to anyone.  In this case only the estate could have been held liable for the assessment; but any enforcement of the claim even though it was based upon a contingency which had not then happened, was barred by the statute of non-claim, because decedent died and an administratrix was appointed in 1921, the estate was settled and the administratrix discharged in 1927, and the stock assessment was not made against "the estate" until 1936.

In the case of Seabury v. Green, 294 U. S. 165, 55 Sup. Ct. 373, 79 L. Ed. 834, 96 A. L. R. 1463, cited by appellant, in holding the estate of decedent liable for an assessment on bank stock that had been distributed to decedent's minor children, the Supreme Court of the United States said:

"Our attention has not been called to any South Carolina statute purporting to, and the State Supreme Court did not hold that any law of the State does, bar the enforcement of the assessment on the ground it was not made before the discharge of the executor.  The decree of the court by which he was discharged, while having the effect of vacating the office, did not operate to extinguish the estate and so the administratrix *de bonis non* with the will annexed became the personal representative of the testator and is liable as the testator would be if he were living and owned the stock."

This case is in entire harmony with our decision in the instant case, that where there is a statute of non-claim or of limitations, it will bar any action on a claim of this nature against *the estate* of a deceased person.

The case of Pufahl v. Parks' Estate, 299 U. S. 217, 57 Sup. Ct. 151, 81 L. Ed. 133, is not identical in point of fact with the instant case, because there it was stipulated "that there are in the executor's possession inventoried assets in excess of the amount of petitioner's claim; that the estate is solvent; and that there are no assets not inventoried within one year from the granting of the letters, or discovered after the expiration of that period." The estate had not been completely settled at the time. The Supreme Court of the United States said there:

"The liability is imposed by the statute. The original subscriber and likewise an immediate or remote vendee of the shares assumes a status—that of stockholder. The assumption of this status involved whatever conditions or burdens the Federal statutes have imposed as incident to the holding of national bank shares. The contingent obligation to pay an assessment is rendered absolute by the Comptroller's action in ordering one; whether that action be taken during the stockholder's life or after death. From the moment the Comptroller's order for assessment the bank's receiver has a claim which would support an action of debt at common law against a living stockholder, or the executor of a deceased stockholder. And *if assessment* be *made after the estate* of a deceased stockholder *has been distributed* the receiver may proceed to *recover the amount from distributees or heirs, if, and to the extent, they are liable for debts of the estate under the law of the domicile."* (Emphasis supplied.)

This decision does not attempt to hold liable for a bank

stock assessment real estate descended to heirs of decedent, where the estate has been fully administered and closed and the administratrix finally discharged approximately nine years before the assessment is made against the estate, and where the statute of limitations has operated to bar recovery from the estate.

The gist of these three decisions of the Supreme Court of the United States is that where a State statute relating to probate matters bars recovery for the assessment from the estate of decedent after lapse of a certain period of time, it likewise bars recovery for the assessment out of property descended to heirs or distributed to distributees, where the assessment is made after the estate has been finally closed. In the instant case we are dealing with an assessment on bank stock in a State bank, but our statutes as to stockholders' liability are practically the same as the Federal statutes. We had such a statute of non-claim of, or limitations in, probate matters, which has already been discussed herein at the time the Whiddon estate was being administered and in addition we had Sec. 3690 R. G. S., 1920, which was carried forward as Sec. 5555 C. G. L., 1927, and which allowed two years after final discharge of an executor or administrator in which to file suit against him, the statute providing in part that it shall "operate as a bar to *any suit* against the person so having acted as executor or administrator, unless the same be commenced within two years from the date of said discharge." In the light of all of our applicable probate statutes referred to, the decisions of the United States Supreme Court and of our own Court on the matter, we conclude that the remedy against the estate has been barred, and likewise the remedy sought to be employed of reaching the property descended to the heirs of decedent.

Therefore, the bill was without equity, and the order dismissing it should be and it is hereby affirmed.

It is so ordered.

WHITFIELD, P. J., and CHAPMAN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.